[Crim. No. 24565. Second Dist., Div. Two. Sept. 5, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES WILLIAM MURPHY, Defendant and Appellant.

84

## COUNSEL

Jonathan K. Golden, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Donald F. Roeschke and Joel Levine, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FLEMING, Acting P. J.**—James William Murphy appeals the judgment of conviction after a jury trial for possession of heroin for sale. (Health & Saf. Code, § 11351.)

### FACTS

On the afternoon of 4 April 1973 police narcotics officers executed a warrant to search Murphy's house on Aztec Street in Sylmar for narcotics and narcotics paraphernalia. On their first search of the house the officers discovered several packages of balloons in Murphy's bedroom closet and a container of lactose in a bathroom. As the officers prepared to search the house again, Murphy said, "It's not in the house." On a search of the garage, the officers found two plastic bags and two balloons; together totaling 30 grams of heroin powder, concealed behind the transmission cover of a motorcycle for which Murphy had the registration slip in his wallet. When confronted with the contraband, Murphy said he was using but not selling it. In the opinion of two experienced narcotics officers, the amount of

heroin and of packaging paraphernalia showed the heroin was possessed for purposes of sale.

## ISSUES

1. *Prior Adjudication.* ■ Based on the same charge of possession of heroin for sale, the prosecution filed a complaint against Murphy in an earlier proceeding. On Murphy's motion, the magistrate, not the same magistrate who authorized the warrant, granted Murphy's motion to "quash" the warrant, in effect suppressing the evidence seized pursuant to the warrant. Since the prosecution could not proceed without the suppressed evidence, the magistrate granted Murphy's motion to dismiss. The prosecution then refiled the same charge in the proceedings at bench. Murphy contends the decision of magistrate in the first proceeding to quash the warrant precluded readjudication of the validity of the same warrant in these proceedings.

This contention is without merit. Murphy's motion to quash the warrant was authorized by Penal Code section 1538.5, subdivision (a): "A defendant may move for the return of property *or to suppress as evidence* . . . ." (Italics added.) Section 1538.5, subdivision (j) provides: "If the property or evidence relates to a felony offense initiated by complaint and the defendant's motion for the return of the property or suppression of the evidence at the preliminary hearing is granted, and if the defendant is not held to answer at the preliminary hearing, the people may file a new complaint or seek an indictment after the preliminary hearing, and the ruling at the prior hearing shall not be binding in any subsequent proceeding. . . ."

Murphy argues that he made his motion to suppress pursuant to Penal Code sections 1539 and 1540,[1] not section 1538.5, and therefore the prosecution could not invoke the refiling provisions of 1538.5. By their

---

[1]Section 1539, subdivision (a) provides: "(a) If a special hearing be held in the superior court pursuant to Section 1538.5, or if the grounds on which the warrant was issued be controverted and a motion to return property be made (i) by a defendant on grounds not covered by Section 1538.5; (ii) by a defendant whose property has not been offered or will not be offered as evidence against him; or (iii) by a person who is not a defendant in a criminal action at the time the hearing is held, the judge or magistrate must proceed to take testimony in relation thereto, and the testimony of each witness must be reduced to writing and authenticated by a shorthand reporter in the manner prescribed in Section 869."

Section 1540 provides: "If it appears that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate must cause it to be restored to the person from whom it was taken."

terms, however, sections 1539 and 1540 do not apply to Murphy's motion to suppress evidence. Before the enactment of section 1538.5, the courts, in default of any better procedure, traditionally permitted defendants to use sections 1539 and 1540 as the basis for pretrial motions to suppress evidence, but with the adoption of section 1538.5 the need for such a tortured reading of the older sections disappeared. *Theodor* v. *Superior Court,* 8 Cal.3d 77 [104 Cal.Rptr. 226, 501 P.2d 234], points out that by the enactment of section 1538.5 the Legislature created "a comprehensive scheme for challenging the introduction into evidence, and for the return, of items unlawfully seized." (8 Cal.3d at p. 91.) Whether Murphy's motion came technically before or during the preliminary hearing, the provisions of section 1538.5 were controlling.

■ Nor can Murphy invoke the doctrine of res judicata. The Supreme Court has ruled that res judicata does not apply to orders dismissing felony proceedings at preliminary hearings. (*People* v. *Uhlemann,* 9 Cal.3d 662 [108 Cal.Rptr. 657, 511 P.2d 609].) We do not condone a policy of repeated attempts by the prosecution to obtain a favorable ruling by presenting the same facts over again in different proceedings, but absent harassment or clear abuse of discretion (see *Kellett* v. *Superior Court,* 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206]) the prosecution is not foreclosed by unfavorable rulings from filing further actions up to the time jeopardy has attached. (*People* v. *Uhlemann, supra,* at p. 668, fn. 4; see *In re Crow,* 4 Cal.3d 613, 622 [94 Cal.Rptr. 254, 483 P.2d 1206].)

2. *Probable Cause.* Murphy contends the affidavit in support of the search warrant failed to set out probable cause for a search of his house.

The affidavit of Police Lieutenant Sherwood states that at 2 p.m. on 4 April 1973 a confidential informant, a narcotics user, told Sherwood that Murphy was dealing heroin from his house and that during the previous week the informant had purchased heroin from Murphy at his house. Murphy said he always had heroin at his house and could take care of the informant's future heroin needs. Lieutenant Sherwood considered the informant reliable because he had known him over 10 years, found him truthful at all times, and on numerous occasions had received information from him which had led to arrests for narcotics violations. In addition to this information, Sherwood had been told by Police Sergeant Olson that a different informant said he purchased heroin from Murphy at his house within the previous three weeks. Furthermore, Sherwood was told by Police Investigator Welsch that an informant reported Murphy as dealing in heroin at the intersection of Kalisher and Kewen Streets in San Fernando. Welsch had seen Murphy talking to a known narcotics user at that intersection and

Lieutenant Sherwood himself saw Murphy at the same intersection engaged in what appeared to be a transaction with a known narcotics user. Finally, Sherwood learned from utility and motor vehicle records that Murphy listed his residence as the Aztec Street address, and from police records he discovered that Murphy had a prior narcotics arrest.

■ We do not accept Murphy's argument that Lieutenant Sherwood's affidavit failed to state sufficient underlying circumstances to establish the reliability of the informant. (See *Spinelli* v. *United States,* 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584].) Sherwood's statement clearly met the requirements for reliability as set forth in *United States* v. *Harris,* 403 U.S. 573 [29 L.Ed.2d 723, 91 S.Ct. 2075], and as noted in *Alexander* v. *Superior Court,* 9 Cal.3d 387, 394, fn. 3 [107 Cal.Rptr. 483, 508 P.2d 1131]: "[W]here the affiant police officer attests in conclusionary terms that the informant is reliable, the informant's statement contains deailed factual allegations indicating he was speaking from personal knowledge, and the informant's statements represent admissions against interest, the reliability of the informant is sufficiently established to support the issuance of a search warrant." Even if Sherwood's statement alone did not establish the reliability of the informant, extensive corroborating evidence (official records, eyewitness accounts by police officers, another informant) established the reliability of the informant's information. (*People* v. *Sheridan,* 2 Cal. App.3d 483, 487 [82 Cal.Rptr. 695]; *People* v. *Balassy,* 30 Cal.App.3d 614, 620 [106 Cal.Rptr. 461].)

■ Nor do we accept Murphy's argument that the affidavit failed to provide probable cause to believe narcotics would be found currently at Murphy's house. Sherwood's information indicated a continuous course of conduct in the sale of heroin at Murphy's house, and it implied that heroin could still be found at that location. (*People* v. *Tillman,* 238 Cal.App.2d 134, 139 [47 Cal.Rptr. 614].)

■ Murphy also argues that Lieutenant Sherwood could not have reasonably believed his informant to be reliable since Sherwood had obtained at least nine other search warrants based on identical information from the same informant and only one other search had uncovered heroin. However, it does not follow that the informant was untruthful because his information did not always pay off. As Murphy concedes, on at least one other occasion the search was fruitful. Moreover, an informant can only describe past circumstances which would lead a reasonable person to believe narcotics presently may be found at a particular place. Circumstances change: narcotics dealers move about, sell and use up their narcotics supplies, or they cache them in new places. Lieutenant Sherwood was not re-

quired to disbelieve the informant, nor was the magistrate acting as a rubber stamp for the police, merely because the informant's average of successful narcotics searches was low.

3. *Knock-Notice.* Murphy contends the officers who searched his house failed to comply with Penal Code section 1531: "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." Viewed in the light most favorable to respondent (*People* v. *Barthel,* 231 Cal.App.2d 827, 832 [42 Cal.Rptr. 290]), the evidence showed that Murphy stood on the front porch of his house when the officer arrived. The door to the house was open and Murphy had the door knob in one hand and the key in the other. Lieutenant Sherwood said to Murphy, "Police officers here investigating narcotics. I have a search warrant to search for heroin. Let us in," and he then gave Murphy a copy of the warrant. Murphy entered the house, and Sherwood followed him in. ■ This evidence clearly establishes substantial compliance with section 1531. The officers identified themselves and announced their purpose to a person who appeared to be in control of the premises and who authorized their entry. (See *People* v. *Lamb,* 24 Cal.App.3d 378, 381 [101 Cal.Rptr. 25].) ■ Section 1531 does not require the officers to give notice to all persons on the premises to be searched. (*Beckers* v. *Superior Court,* 9 Cal.App.3d 953, 960 [88 Cal.Rptr. 602].)

4. *Disclosure.* Murphy contends the prosecution should have disclosed the name of Lieutenant Sherwood's confidential informant. (See *People* v. *Garcia,* 67 Cal.2d 830, 840 [64 Cal.Rptr. 110, 434 P.2d 366].) He argues the informant might have been a material witness on the issue of guilt because he might have been able to substantiate Murphy's defense theory that the heroin belonged to one Martinez, to whom Murphy claimed he had previously sold the motorcycle.

■ To require disclosure of the name of a confidential informant, the defendant must show a reasonable possibility that the informant could give evidence that might result in defendant's exoneration. (*People* v. *Sewell,* 3 Cal.App.3d 1035, 1039 [83 Cal.Rptr. 895].) Disclosure was not required here because Murphy's claim failed to rise above mere speculation: we know only that the informant purchased heroin from Murphy within a week before the search; nothing in the record remotely suggests the informant knew anything about Martinez, about Murphy's motorcycle, or about Murphy's asserted sale of the motorcycle to Martinez.

5. *Instructions.* ■ Murphy contends the trial court erred in refusing to give his requested instructions on the subject of admissions and on evi-

dence favorable to the defense. We find no prejudicial error in the refusal to give these instructions for the trial court amply covered their substance in other instructions given to the jury. In the circumstances of this case reiteration of the reasonable doubt rule as applied to particular elements of the crime charged would have added nothing to the jury's understanding. (*People* v. *Gomez,* 24 Cal.App.3d 486, 490 [100 Cal.Rptr. 896].)

6. *Punishment.* Murphy admitted four prior felony convictions. ■ Two convictions related to narcotics, and therefore under Health and Safety Code section 11351, subdivision (c), on his sentence to state prison for the crime of possession of heroin for sale Murphy would not become eligible for release or parole for 15 years. Murphy contends this mandatory minimum prison term amounts to cruel and unusual punishment.

*In re Foss,* 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073], supports this contention. *Foss* concluded that the provisions in Health and Safety Code section 11352 (punishment for sale of heroin) which preclude parole consideration of a third-time offender for 15 years, constitute cruel and unusual punishment under article I, section 6, of the California Constitution. (10 Cal.3d 910, 917, fn. 3.) Since *possession* of heroin for sale is theoretically a less culpable crime than *sale* of heroin, we conclude the Supreme Court would find invalid the similar minimum-term provisions in section 11351, and we so hold.

The Adult Authority is directed to disregard the parole restriction provisions in Health and Safety Code section 11351, subdivision (c) and grant appellant parole consideration at such time as is otherwise appropriate under law. In all other respects, the judgment is affirmed.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied September 26, 1974, and appellant's petition for a hearing by the Supreme Court was denied October 30, 1974.