[No. B006628. Second Dist., Div. Three. Sept. 3, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT BENCOMO, Defendant and Appellant.

**COUNSEL**

Harvey E. Byron for Defendant and Appellant.

John K. Van de Kamp, Attorney General, William R. Weisman and Frederick Grab, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LUI, J.—**

### PROCEDURAL BACKGROUND

In an information filed March 23, 1984, appellant Robert Bencomo was charged with conspiracy to sell and possession of cocaine for sale, in violation of Penal Code section 182,[1] and Health and Safety Code sections 11351 and 11352, respectively, between the dates of January 17, 1984, and February 13, 1984 (count I). Appellant was also charged with the sale of cocaine, in violation of Health and Safety Code section 11352 on February 6, 1984 (count II), and with possession for sale of one kilo of cocaine on

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

February 13, 1984, in violation of Health and Safety Code section 11351 (count III).

In connection with count II, it was further alleged that in the commission of the offense, appellant and a codefendant, Gordon Miller, possessed for sale approximately one pound (in excess of 28.5 grams) of cocaine within the meaning of section 1203.04, subdivision (b)(1). It was also further alleged in connection with count III that appellant possessed one ounce and more of cocaine (one kilo) for sale within the meaning of section 1203.04, subdivision (b)(1).

Appellant was arraigned and entered a plea of not guilty. He subsequently filed two motions to suppress evidence obtained during the search of his house. The first motion was made pursuant to section 1531, in which appellant contended that the police failed to comply with the knock-notice requirements of section 1531 in executing the search warrant. The second motion was made pursuant to section 1538.5 in which he contended that the police unlawfully obtained his unlisted name and address from the telephone company in violation of his reasonable expectation of privacy under California law.

Following the denial of appellant's motions to suppress evidence and to quash the search warrant, appellant changed his plea on count II to guilty and admitted the further allegation of possession of cocaine in excess of one pound (§ 1203.04, subd. (b)(1)). In making his plea, appellant twice stated that his guilty plea was based on the trial court's denial of his 1538.5 motion. Counts I and III were then dismissed in furtherance of justice.

The trial court denied probation, and appellant was sentenced, pursuant to a plea agreement, to the low base term of three years on count II. He received credit for 243 days in custody, which included 81 days for good time/work time. The trial court ordered the Department of Corrections to submit a report to it within 120 days pursuant to section 1170, subdivision (d).

Appellant filed a timely notice of appeal from the judgment of conviction.

### FACTUAL BACKGROUND

On the evening of February 13, 1984, Detective Alan Price, who was assigned to the narcotics division of the City of Montebello Police Department, participated in the execution of a search warrant on appellant's resi-

dence in the Woodland Hills area. Nine other officers participated.[2] When Price and the other officers arrived at Bencomo's residence, they encountered a five-foot concrete wall with a wrought iron padlocked gate situated in front of the house and driveway.[3] The gate extended the width of the driveway and consisted of vertical wrought iron bars spaced several inches apart. The gate was 20 or 30 feet from the front door. Because there was no buzzer, bell, or other means of contacting the occupants of the house from their vantage point outside the gate, the officers proceeded to climb over the gate.

After climbing over the gate, Price observed lights go on in the house, the front door open, and appellant emerge from the house. As the two men approached each other, appellant asked Price to identify himself, whereupon Price informed appellant that he was a police officer and that he had a search warrant authorizing the search of his person and home. Price then asked appellant to place his hands on his head so he could conduct a pat-down search. Appellant again asked Price who he was. When Price repeated that he was a police officer, appellant began to struggle.

After subduing appellant, Price handcuffed him and asked if there was anyone in the house. Appellant answered that his wife was inside. Police then followed appellant as he walked through the open door of the house. As Price entered, he announced in a "somewhat loud voice" that he was a police officer. While Price stayed in the front room with appellant, the other officers went to the back of the house to locate appellant's wife. Price testified that he heard the officers knock on a door and identify themselves as police officers before entering the room where appellant's wife was located. The officers then conducted a search of appellant's home and found cocaine.

At the hearing on appellant's motion to quash the search warrant, the People stipulated that the "official departmental channel" from which they alleged to have obtained appellant's name and address in the affidavit supporting the search warrant for appellant's residence, was actually the telephone company. Appellant's telephone number, name and address were unlisted. Since appellant's motion to suppress evidence obtained during the search was based entirely on his motion to quash the search warrant, the trial court only permitted testimony which related to information contained within the "four corners of the search warrant."

---

[2]Pursuant to rule 12(a) of the California Rules of Court, we have augmented the record on appeal to include the original superior court file.

[3]It is not clear from testimony or pictures of the property whether the wall surrounded appellant's residence, or merely blocked access through the front. Since the concrete wall around the front of the property appears to be a common wall shared with the neighbors on either side, no access to the house from any direction without passing through the gate is apparent.

CONTENTIONS ON APPEAL

Appellant's contentions may be summarized as follows:

1. Appellant's reasonable expectation of privacy in his unlisted name, address and telephone number was violated when police obtained such information from the telephone company without a search warrant, and thus the search warrant subsequently obtained for appellant's residence must be quashed pursuant to our Supreme Court's holding in *People* v. *Chapman;*

2. The police officers failed to comply with the knock-notice requirements of section 1531 when they climbed over the fence surrounding his residence, as well as when they entered his house during the service of the search warrant.

DISCUSSION

I

*The Trial Court Was Not Compelled to Quash the Search Warrant Pursuant to People* v. *Chapman*

Appellant vigorously contends that because the police obtained his name and address from the telephone company and were thus able to obtain a search warrant for his residence, the search warrant must be quashed and the evidence seized during the search must be suppressed pursuant to *People* v. *Chapman* (1984) 36 Cal.3d 98 [201 Cal.Rptr. 628, 679 P.2d 62]. We conclude that the *Chapman* decision is not retroactive.

Even if *Chapman* were retroactive, Proposition 8[4] would preclude suppression of the evidence as a remedy for the police misconduct. Therefore, we reject appellant's contention that the trial court erred in denying his motion to quash the search warrant and his motion made pursuant to section 1538.5.

A. *The California Supreme Court Decision in People* v. *Chapman Is Not Retroactive*

In *Chapman,* the police obtained the name and address of a "phone spot" operator[5] for an illegal betting operation from the telephone company with-

---

[4]California Constitution, article I, section 28, subdivision (d).

[5]A "phone spot" operator takes bets from the patron, relays the bets to a central location and provides the patron with up-to-date racing information.

out a warrant by using an unlisted telephone number given to them by a confidential informant. The police later obtained a search warrant for the phone spot operator's (McGee) residence and car, reciting the name and address obtained from the telephone company in the affidavit. The search of McGee's residence turned up evidence of illegal betting activity against both McGee and Chapman; both were arrested and charged with conspiracy to commit bookmaking.

The trial court granted the defendants' motions to suppress and then set aside the information. Our Supreme Court affirmed, defining the sole issue presented as whether the police had "violated a constitutionally protected expectation of privacy by obtaining, without a warrant, the name and address of McGee from the telephone company although the number [was] unlisted. [Fn. omitted.]" (*People* v. *Chapman, supra,* at p. 105.) Examining the principles it had enunciated in *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238 [118 Cal.Rptr. 166, 529 P.2d 590], and *People* v. *Blair* (1979) 25 Cal.3d 640 [159 Cal.Rptr. 818, 602 P.2d 738], the court concluded that an individual has a reasonable and constitutionally protected privacy interest in the subscriber information he or she must reveal to the telephone company in order to have a telephone. Thus, as in *Burrows,* where police must first obtain a warrant to gain access to a depositor's bank records, and in *Blair,* where a warrant is necessary for police to obtain a customer's telephone call records, the police must obtain a warrant prior to securing the name and address of an unlisted telephone subscriber from the telephone company. (*People* v. *Chapman, supra,* 36 Cal.3d at pp. 106-108.)

*Chapman,* however, was not decided until April 26, 1984, two months after police obtained appellant's name and address from the telephone company. The question with which we are thus presented is whether *Chapman* may be applied retroactively to invalidate the search warrant based on the telephone subscriber information in this case.

Recently, the retroactive application of *Chapman* was examined in *People* v. *Martino* (1985) 166 Cal.App.3d 777 [212 Cal.Rptr. 45]. In *Martino,* as in the instant case, the police obtained a defendant's name and address from the telephone company without a search warrant based on a telephone number they had in their possession prior to the Supreme Court's decision in *Chapman.* Examining the rules for determining the retroactivity which were recently articulated by our Supreme Court in *People* v. *Guerra* (1984) 37 Cal.3d 385, 399 [208 Cal.Rptr. 162, 690 P.2d 635], the *Martino* court concluded that *Chapman* could not be applied retroactively to invalidate police action taken prior to *Chapman. (People* v. *Martino, supra,* at pp. 787-788.)

In so holding, the *Martino* court looked to the existing law at the time the police obtained the subscriber information from the telephone company, which held that a telephone subscriber has "no reasonable expectation of privacy in [his/her] name, address, or telephone number as found in the records of the telephone company . . . ." (*People* v. *Elder* (1976) 63 Cal.App.3d 731, 738 [134 Cal.Rptr. 212]; quoted in *Martino, supra,* 166 Cal.App.3d at pp. 786-787.) The court also noted that "[i]t appears that no petition for hearing in the Supreme Court was filed in *People* v. *Elder, supra,* 63 Cal.App.3d 731. No other decision of the state appellate court addressed the issue at the time [the police] obtained Martino's address from the telephone company. [Fn. omitted.]" (*Martino, supra,* at p. 787.) The court then observed that *People* v. *Blair, supra,* 25 Cal.3d 640, a decision upon which the *Chapman* court relied, dealing with one's privacy interest in records of telephone calls, was not filed until November 9, 1979, a month *after* the defendants in *Martino* were arrested.

Given that *Blair* had not been decided and *Elder* authorized the police to obtain the identification of telephone subscribers from the telephone company without a warrant, the *Martino* court concluded: "On such authority, we do not think the Supreme Court intended police officers, who are bound only to a reasonableness standard in their determination of probable cause, to exercise such perspicacious foresight of legal trends as would have led them to believe that they had to obtain a warrant before seeking the address of a subscriber from the telephone company." (*Martino, supra,* at pp. 787-788.) The court further noted that "under the then-existing state of the law represented by *People* v. *Elder, supra,* 63 Cal.App.3d 731, the conduct of the police in obtaining *only* the address corresponding to the telephone number they were given may well have reflected due regard for the privacy interests of the telephone subscriber consistent with their duty to investigate alleged narcotics violations within the bounds of the law. [¶] In this regard, we are mindful of recent California decisions holding that the federal good faith exception to the exclusionary rule applies to California cases and is retroactive. (See, e.g., *People* v. *Helmquist* (1984) 161 Cal.App.3d 609 . . . .)" (*Id.,* at pp. 788-789, italics in original.)

Although *Martino* limited its holding to its own facts, we find that *Chapman* was a sufficiently significant departure from former law, and *Elder* was specific enough in holding there is no reasonable expectation of privacy in telephone subscriber information to support the conclusion that *Chapman* established a new rule of law which should not apply retroactively.

Appellant's motions to quash the warrant and suppress the evidence were thus properly denied.

B. *Proposition 8 Precludes Suppression of the Evidence Under Chapman*

Even if we were to conclude that *Chapman* operated retrospectively in the case at bar, we would still be constrained to hold that under post-Proposition 8 law the trial court acted properly in denying appellant's motion to suppress.

██ In *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], our Supreme Court declared that the truth-in-evidence provision of Proposition 8 (art. I, § 28, subd. (d) of the Cal. Const.) did not alter the substantive scope of either section 13 or section 24 of article I of the California Constitution,[6] and "[w]hat would have been an unlawful search or seizure in this state before the passage of that initiative would be unlawful today, . . . even if it would pass muster under the federal Constitution." What Proposition 8 did, however, was "eliminate a judicially-created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." (*In re Lance W., supra,* at pp. 886-887, italics in original.)

██ Since the police action in this case occurred after the effective date of Proposition 8, the principles of *In re Lance W.* apply, and we must turn to federal law to determine whether the evidence obtained in violation of *Chapman* may be suppressed.[7] Reviewing the protection federal law affords the privacy interests appellant now claims, we find that the evidence obtained by the police from the telephone company in this case would not be excluded under federal law, and was thus properly admitted in the case at bar.

As the *Chapman* court noted: "Federal law does not appear to protect any privacy interest in bank or telephone records. In contrast to this state's case law, the federal courts have accepted the fiction that there is no expectation of privacy in bank records (*United States* v. *Miller* (1976) 425 U.S. 435 [48 L.Ed.2d 71, 96 S.Ct. 1619]) or in outgoing telephone call records (*Smith* v. *Maryland* (1979) 442 U.S. 735 [61 L.Ed.2d 220, 99 S.Ct. 2577]) because the user voluntarily conveys this information to a third party—the bank (*Miller*) or the telephone company (*Smith*). As a result, the individual

---

[6]Article I, section 13, provides that: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

Article I, section 24, provides that: "Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution."

[7]*Chapman*, it must be noted, was a pre-Proposition 8 case, and the court limited its holding to pre-Proposition 8 law. (*People* v. *Chapman, supra,* 36 Cal.3d at p. 105, fn. 3.)

user assumes the risk that the third party will in turn disclose it to the police upon request. (See *United States* v. *Miller, supra,* 425 U.S. at pp. 442-443 [48 L.Ed.2d at pp. 78-79]; *Smith* v. *Maryland, supra,* 442 U.S. at pp. 743-744 [61 L.Ed.2d at pp. 228-229].)" (*People* v. *Chapman, supra,* 36 Cal.3d at p. 107, fn. 5.) Thus, as the *Martino* court observed, "under present law, while seizure of unlisted telephone subscriber information without a warrant remains unlawful pursuant to *Chapman,* such information may not be excluded from evidence because federal law does not require its exclusion." (*People* v. *Martino, supra,* 166 Cal.App.3d at p. 786, fn. 3.)

Since the police obtained appellant's name and address from telephone company records in violation of the principles articulated in *Chapman* nearly two years after the implementation of Proposition 8, there can be no question but that federal exclusionary principles apply and the trial court properly declined to suppress the evidence below.

II

A. *The Police Were Not Required to Comply with the Knock-notice Requirements of Section 1531 as to the Locked Gate and Fence Surrounding Appellant's Residence*

 Appellant next contends that the police violated the knock-notice requirements of section 1531[8] when they climbed over the gate enclosing appellant's driveway and residence without first knocking or shouting from outside the gate to attract the attention of those inside. We conclude that the knock-notice requirements of section 1531 ordinarily do not apply to gates or fences. Therefore, appellant's contention is without merit.

However, our analysis cannot stop with a simple conclusion that section 1531 has no applicability to gates and fences because the configuration of a residence and its appurtenances is particularly unique to each residence.

In *People* v. *Bruce* (1975) 49 Cal.App.3d 580 [122 Cal.Rptr. 648], this court was faced with deciding whether to extend the section 844 knock and notice requirements to a detached garage located some 25 to 30 feet from the small residence located on the premises. We quoted from *United States* v. *Mullin* (4th Cir. 1964) 329 F.2d 295, 299, which stated: "We are not unmindful of the fact that [the federal knock-notice requirements contained in 18 United States Code] § 3109 speaks of 'house' and we are here con-

---

[8]Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the [search] warrant, if, after notice of his authority and purpose, he is refused admittance."

cerned with an unannounced entry into an outbuilding, separate and distinct from [codefendant] Perry's residence. However, we are unwilling to construe narrowly a statute which embodies a traditional right which is deeply imbedded in Anglo-American Law."

■ Section 1531 requires the police " '(1) to knock or utilize other means reasonably calculated to give adequate notice of their presence to the occupants, (2) to identify themselves as police officers, and (3) to explain the purpose of their demand for admittance.' " (*People* v. *Keogh* (1975) 46 Cal.App.3d 919, 927 [120 Cal.Rptr. 817]; *Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 319 [82 Cal.Rptr. 348, 461 P.2d 628].) While those requirements have been extended to other buildings, both attached and detached from a residence, and are not limited to the doors and windows of the house itself (*People* v. *Gallo* (1981) 127 Cal.App.3d 828, 839-840 [179 Cal.Rptr. 662]; *People* v. *Bruce* (1975) 49 Cal.App.3d 580, 587 [122 Cal.Rptr. 648]), appellant has brought to our attention no cases, and we know of none, which further extend the knock-notice requirements to walls, fences, or gates which block access to a dwelling, as in the instant case.

■ In this case, the police could not reach the front door to appellant's residence to serve the search warrant without first getting past the concrete wall or wrought iron gate in front of the driveway, which gate had no communication device connected with the house. Under such circumstances, we conclude that the police are not required to observe the section 1531 requirements. We also reject appellant's suggestion that there was nothing to prevent Detective Price "from hollering while he was at the front gate." We do not read section 1531 as calling for such "notice" on the part of the police, nor have we found any cases which impose such a requirement.

While the parties have not cited any California cases which discuss the extent to which the police must comply with the requirements of section 1531 when serving a search warrant where access to the structure is blocked by a locked gate and fence, a federal case,[9] *United States* v. *Moreno* (9th Cir. 1985) 758 F.2d 425,[10] appears at first blush to be directly on point. *Moreno,* however, is distinguishable from the present appeal.

---

[9]The federal knock-notice requirements may be found at 18 United States Code section 3109, which is significantly similar to section 1531. Section 3109 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

[10]In *United States* v. *Moreno* (9th Cir. 1983) 701 F.2d 815 (*Moreno I*), the court held that the police had violated the federal knock-notice requirements when they entered a small alcove in front of the front door to defendant's apartment, and evidence seized during the subsequent search was suppressed even though the police complied with section 3109 at the

In *Moreno,* the police "jimmied" an ornamental iron gate which enclosed a 36-square-foot alcove in front of the front door to defendant's apartment. Windows from the apartment opened out into the alcove, and admittance to the apartment was only through the iron gate. The gate was always locked, but there was a doorbell near the gate by which visitors could summon the occupants.

In both *Moreno I* and *Moreno II,* the court held that the police action in breaking open the gate to reach the front door, without first attempting to comply with the knock-notice requirements at the gate, rendered that initial entry unlawful. In so ruling, however, the court limited its holding to the specific facts before it: "As in [*United States* v.] *Fluker* [(9th Cir. 1976)] 543 F.2d [709] at 717, we emphasize that *our holding is confined to the unique physical layout of this apartment. We do not suggest that all exterior gates are protected from entry by section 3109.*" (*Moreno I, supra,* 701 F.2d at p. 817, fn. 2, italics added.) The instant case is distinguishable from *Moreno* in several respects.

In *Moreno,* the total area of the alcove was only 36 square feet; in contrast, the wall in this case enclosed appellant's entire front yard and driveway and the gate was 20 to 30 feet away from the front door. In addition, in *Moreno,* visitors were able to contact those inside to gain admittance, while in the instant case, there were no means of attracting anyone's attention from outside the gate. Finally, in *Moreno,* police crept under one of the windows to the apartment to reach the gate so as not to alert the occupants to their presence. Here, there is no indication the police sought to conceal their presence. On the contrary, the fact that 10 police officers clambered over a gate is a rather strong indication that they did not expect to surprise anyone inside the residence.

In those California cases which have examined the application of the knock-notice requirements to the outer doors of multiunit residential buildings, appellate courts have held that the occupant's diminished expectation of privacy in the common hallways coupled with the fact that the occupant of the unit to be searched would not hear the officers outside the building, render the knock-notice requirements inapplicable. (*People* v. *MacAvoy* (1984) 162 Cal.App.3d 746, 768 [209 Cal.Rptr. 34]; *United States* v. *Perkins* (D.D.C. 1968) 286 F.Supp. 259, affd. *sub nom., Perkins* v. *United*

---

front door. On petition for writ of certiorari, the United States Supreme Court, — U.S. — [83 L.Ed.2d 223, 105 S.Ct. 286], vacated and remanded for further consideration in light of *Segura* v. *United States* (1984) 468 U.S. 796 [82 L.Ed.2d 599, 104 S.Ct. 3380]. In *United States* v. *Moreno, supra,* 758 F.2d 425 (*Moreno II*), the court vacated its earlier holding, and still ruling that the initial entry into the alcove was in violation of section 3109, affirmed the ruling of the district court admitting the evidence on the ground that the second lawful entry purged the taint from the first unlawful entry.

*States* (D.C. Cir. 1970) 432 F.2d 612 (*per curiam*), cert. den. (1970) 400 U.S. 866 [27 L.Ed.2d 106, 91 S.Ct. 108].) In both of these cited cases, the courts noted that "an announcement at the front door would have served no purpose since the defendant's room was so distant from the front doorway that he would have been unable to hear the announcement." (*MacAvoy, supra,* at p. 768; *Perkins, supra,* at pp. 263-264.)

We find that no purpose would be served by requiring the police to stand outside a gate and knock on the gate which was 20 feet from the front door of the residence to be searched. Under these circumstances, the police were not required to comply with section 1531.

B. *Once Inside Appellant's Yard, the Police Substantially Complied With the Requirements of Section 1531*

 Appellant also contends that the police failed to comply with the knock-notice requirements of section 1531 as they entered his residence. He contends that they should have announced "police," knocked and waited to be granted or denied admittance before entering. We disagree.

It is undisputed that the police climbed over the fence and were in appellant's front yard as appellant emerged from his house. Detective Price identified himself as a police officer and told appellant he had a search warrant for his person and the premises. After appellant struggled and was handcuffed, he told the police that his wife was inside, and then preceded the police into the house. As Detective Price entered the house, he identified himself as a police officer in a loud voice.

Given that appellant was the person apparently in control of the premises and that he refused the request for admittance by struggling with the police, we find that the police substantially complied with the section 1531 requirements before entering the house.

 Section 1531 does not require a verbal refusal to admit police into the house. (*People* v. *Gallo, supra,* 127 Cal.App.3d at p. 838.) Initiating a struggle after the police have identified themselves and stated their mission amounts to a denial of entry under the statute.

 Section 1531 also does not mandate the police to give notice to every person on the premises; rather, the requirements of section 1531 are satisfied where police give notice to the person apparently in control. (*People* v. *Murphy* (1974) 42 Cal.App.3d 81, 88 [116 Cal.Rptr. 889].) In *Murphy,* the court found substantial compliance with section 1531 under the following circumstances: the defendant was standing on the front porch to his

house when the police arrived; the police officer approached Murphy, identified himself and stated his purpose; the defendant then entered the house and the police followed without knocking.

■ The circumstances surrounding the police entry in the case at bar are almost identical to those in *Murphy* except that appellant herein indicated a refusal to admit the officers by beginning to struggle. When the police accompanied appellant into the house, the issue of whether admittance was to be granted or denied had been decided; no purpose would have been served by requiring the police to knock on the front door.

### DISPOSITION

The judgment of conviction is affirmed.

Klein, P. J., and Danielson, J., concurred.