[No. D005235. Fourth Dist., Div. One. Sept. 2, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
LANE LARKIN, et al., Defendants and Appellants.

**COUNSEL**

Eugene G. Iredale for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John W. Carney and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WORK, J.**—Lane and Lenka Larkin appeal judgments convicting them of bookmaking. (Pen. Code,[1] § 337a, subd. 1.) They contend the trial court erred in not suppressing evidence obtained by the use of a telephone monitoring device (pen register) to identify outgoing calls they characterize as a prohibited wire tap (§ 631). A series of warrants were issued requesting the telephone company to install pen registers on various phone numbers suspected of being used for bookmaking activity.[2] They claim that even if not an illegally used device, a warrant authorizing a 30-day use of the telephone monitor was invalid and there was insufficient evidence to support Lenka's conviction. Larkin further argues any use of the pen register, even with a warrant, was unlawful. We affirm the judgment.

### I

Preliminarily, we note the offenses here were committed after the June 1982 passage of Proposition 8, enacting article I, section 28, subdivision (d) of the California Constitution. Section 28(d) states, "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding . . .," and provides for certain exceptions to this general rule of admissibility, none of which apply here. ■ Our Supreme Court has noted that Proposition 8 did not repeal the provisions in the California Constitution which provide for the right to be free from unreasonable searches and seizures (art. I, § 13), independent of the rights guaranteed by the federal Constitution (art. I, § 24): "The substantive scope of both provisions remains unaffected by Proposition 8. What would have been an unlawful search or seizure in this state before the passage of that initiative would be unlawful today, and this is so even if it would pass muster under the federal Constitution. What Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].)

■ Because warrantless uses of a pen register do not violate the Fourth Amendment (*Smith v. Maryland* (1979) 442 U.S. 735, 742-746 [61 L.Ed.2d 220, 230, 99 S.Ct. 2577]), the exclusionary rule is not applicable. (Cf. *People*

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] A pen register is a mechanical device connected to a telephone number to monitor dialing activity. It registers the phone numbers dialed to make outgoing calls, including the dates and times the receiver is picked up and replaced.

v. *Bencomo* (1985) 171 Cal.App.3d 1005, 1014-1015 [217 Cal.Rptr. 826]) [federal exclusionary rules do not require suppression of unlisted telephone subscriber information obtained without warrant]; see Comment, *Proposition 8: California Law After In re Lance W. and People v. Castro* (1985) 12 Pepperdine L.Rev. 1059, 1076-1077.) Nevertheless, California law still governs the scope of lawful searches and seizures in this state and law enforcement officials are still required to follow that law. Since the issue was briefed by the parties, we address the issue (see *People* v. *Bencomo, supra,* 171 Cal.App.3d at pp. 1011-1013; cf. *United States* v. *Leon* (1984) 468 U.S. 897, 905 [82 L.Ed.2d 677, 686-687, 104 S.Ct. 3405, 3411-3412] [constitutional invasion of rights is fully accomplished by unlawful search or seizure itself, not by subsequent admission of evidence]) and conclude the use of pen registers with a warrant is permissible under California law.

In *People* v. *Blair* (1979) 25 Cal.3d 640, 654-655 [159 Cal.Rptr. 818, 602 P.2d 738], the Supreme Court stated phone company records of toll calls made to and from a certain number, without a judicial determination that the police were entitled to them, was unlawful under article I, section 13, of the California Constitution. (Accord *People* v. *McKunes* (1975) 51 Cal.App.3d 487, 490-491 [124 Cal.Rptr. 126].) Phone call information obtained from the telephone company's records was held to be the equivalent of phone call information obtained from a pen register. (*Blair, supra,* 25 Cal.3d at p. 654.)[3] The implication from *Blair* is that pen register information seized *with* a judicial determination of police entitlement is lawful. (Accord *Com.* v. *Beauford* (1984) 327 Pa.Super.253 [475 A.2d 783, 791].) A pen register, providing information about outgoing and incoming calls, involves the same privacy rights as toll information in phone company records. Here, the police had a warrant and thus the seizure did not violate the California Constitution.

Larkin argues use of a pen register without the consent of the phone subscriber is unlawful under section 631, which prohibits unauthorized connections with telephone lines[4] and that section 631 survives Proposition 8.

---

[3]*Blair,* a pre-Proposition 8 case, makes this observation in the context of concluding that although the warrantless seizure of numbers from a pen register did not violate the federal Constitution under *Smith* v. *Maryland, supra,* 442 U.S. 735, a similar seizure of numbers from phone company records did violate the California Constitution. Nevertheless, the court in *Blair* held the information admissible since it was lawfully seized in Pennsylvania when the defendant was a resident there. (*People* v. *Blair, supra,* 25 Cal.3d at p. 656.)

[4]Section 631 states: "Any person who, by means of any machine, instrument, or contrivance, or in any other manner, *intentionally taps, or makes any unauthorized connection,* whether physically, electrically, acoustically, inductively, or otherwise, *with any telegraph or telephone wire,* line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, *or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message,* report, or communication while the same is in

Even assuming, arguendo, section 631 did apply to pen registers and is not obviated by Proposition 8, section 633 states section 631 does not prohibit law enforcement officials from overhearing or recording a communication they could lawfully hear or record prior to enactment of the act. (*People* v. *Conklin* (1974) 12 Cal.3d 259, 263 [114 Cal.Rptr. 241, 522 P.2d 1049].) Although federal law permits intercepting telephone conversations with a state warrant authorized by a state statute (18 U.S.C.A. §§ 2516, 2518), California has not statutorily authorized warrants allowing such interceptions. (See *People* v. *Conklin, supra,* 12 Cal.3d at p. 271, fn. 10.) On the other hand, as discussed above, our Supreme Court's statement in *People* v. *Blair, supra,* 25 Cal.3d at page 655, suggests obtaining dialed phone numbers with a warrant is permitted, and thus the use of a pen register would fall under the law enforcement exception in section 633.[5]

Larkin asserts that at the time of the 1967 enactment of section 631, the use of a pen register was illegal, citing *United States* v. *Caplan* (E.D.Mich. 1966) 255 F.Supp 805. *Caplan* interpreted the second clause of former 47 United States Code section 605,[6] and held the use of a pen register constituted the interception of a communication, and no authority could authorize it without the consent of the sender. (*Id.* at p. 808; accord *United States* v. *Dote* (7th Cir. 1966) 371 F.2d 176, 179-181; see *Lee* v. *Florida* (1968) 392 U.S. 378, 380 [20 L.Ed.2d 1166, 1169, 88 S.Ct. 2096] [47 U.S.C. § 605 applicable to the states].) In 1968, Congress amended the second clause of 47 United States Code section 605 and restricted it to the interception of radio communications, evincing an intent to allow the use of pen registers by law enforcement authorities. (*United States* v. *New York Telephone Co.* (1977) 434 U.S. 159, 168, fn. 13 [54 L.Ed.2d 376, 387, 98 S.Ct. 364].) Congress also excluded pen registers from title III of the Omnibus Crime Control Act of 1968, 18 United States Code section 2510 et seq.[7] (which sets

---

transit or passing over any such wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison, or by both such fine and imprisonment in the county jail or in the state prison. . . ." (Italics added.)

[5] Because we hold section 633's law enforcement exception applies here, we do not discuss additional arguments Larkin presents regarding whether Proposition 8 applies to *statutorily* created exclusionary rules or whether post-Proposition 8 amendments to the statutory scheme effectively reenacted section 631.

[6] Former 47 United States Code section 605 stated: ". . . . no person not being authorized by the sender shall intercept any communication. . . ."

[7] 18 United States Code section 2510, subdivision (4) states: " 'intercept' means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device."

forth procedures for securing judicial authority to intercept wire communications), on the basis that pen registers do not "intercept" since they do not acquire the "contents" of communications. (*Id.* at p. 167 [54 L.Ed.2d at p. 386].) Later, the United States Supreme Court held the use of a pen register was not a search under the Fourth Amendment of the federal Constitution and did not require a warrant. (*Smith* v. *Maryland, supra,* 442 U.S. at pp. 745-746 [61 L.Ed.2d at pp. 229-230].) Thus, *Caplan's* interpretation of former 47 United States Code section 605 did not reflect Congress' intent, and its short-lived interpretation cannot be used to establish the scope of lawful police conduct. The statement by our Supreme Court in *Blair,* indicating a warrant is sufficient to authorize the seizure of dialed telephone numbers, controls.

## II

A series of warrants were issued during the months of July and August 1985, each allowing use of the pen register for a 10-day period. The seventh and final warrant allowed use of the pen register for a continuous 30-day period, beginning September 5, 1985. Section 1534 requires a warrant be executed and returned within 10 days of issuance. At the preliminary hearing, the municipal court suppressed evidence seized more than 10 days from the September 5th date of issuance of the last warrant. The superior court later granted the People's motion under section 1538.5, subdivision (j) and ruled the evidence admissible on the basis the police acted in objectively reasonable reliance on a subsequently invalidated warrant. (*United States* v. *Leon, supra,* 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405]; *People* v. *Helmquist* (1984) 161 Cal.App.3d 609 [207 Cal.Rptr. 718].)

Section 1534 states: "A search warrant shall be executed and returned within 10 days after date of issuance. . . . After the expiration of 10 days, the warrant, unless executed, is void. . . ." ▮ The purpose of the 10-day requirement is to insure probable cause still exists at the time of execution. (*People* v. *Schroeder* (1979) 96 Cal.App.3d 730, 733 [158 Cal.Rptr. 220].) After the 10-day period, the magistrate must make a finding probable cause still exists in order to reissue the warrant or issue a new warrant. (*People* v. *Brocard* (1985) 170 Cal.App.3d 239, 242-243 [216 Cal.Rptr. 31].) On appeal the People assume, arguendo, that the warrant should not have been issued for a period beyond 10 days and do not argue we should hold otherwise. Since we hold below that suppression was not required under the federal constitutional rules which govern this post-Proposition 8 case, we need not decide if section 1534 allows a court to issue a warrant providing for execution in excess of 10 days. (See *United States* v. *New York Telephone Co., supra,* 434 U.S. at p. 169, fn. 16 [54 L.Ed.2d at p. 388] [court may authorize duration of pen register for 20 days notwithstanding federal rule

requiring search be conducted within 10 days of its issuance]; cf. *Berger* v. *New York* (1967) 388 U.S. 41, 59 [18 L.Ed.2d 1040, 1052, 87 S.Ct. 1873] [60-day authorization of eavesdropping is unlawful under Fourth Amendment]; 18 U.S.C. § 2518, subd. 5 [30-day limit on wiretap].)

■ Assuming the 30-day period was invalid under section 1534, exclusion was nevertheless not the appropriate remedy since it was not required under the Fourth Amendment. As indicated above, since the enactment of section 28(d), the exclusionary rule can be applied to remedy searches and seizures violating California law, only if federal law also mandates exclusion. (*In re Lance W., supra,* 37 Cal.3d at pp. 886-887.) The United States Supreme Court has held there is no reasonable expectation of privacy in the numbers dialed from a telephone, and thus the Fourth Amendment of the federal Constitution does not require a warrant for the lawful use of a pen register. (*Smith* v. *Maryland, supra,* 442 U.S. at p. 742-746 [61 L.Ed.2d at pp. 227-230].) Since the federal Constitution requires no warrant, the use of a 30-day warrant here does not require the exclusion of evidence.[8] (Cf. *People* v. *Bencomo, supra,* 171 Cal.App.3d at pp. 1014-1015.)

### III

In any event, it is not reasonably probable the Larkins would have obtained a more favorable result had the evidence received after the first 10 days of the final warrant's existence been suppressed. The municipal court suppressed the testimony of three witnesses, James M. Walker, Gerald Jeli, and Angelo Dispoldo, whose names were obtained after the 10-day period, and the phone numbers obtained after the 10-day period.[9] Based on this suppression, the court did not bind over on two overt acts which were alleged as part of a conspiracy charged in count one of the information.[10] Later, the superior court dismissed the count one conspiracy charge, but admitted the previously suppressed evidence for its relevance to show the commission of the remaining bookmaking charges.

---

[8] On appeal, the People also argue the evidence was properly admitted since Larkin showed no prejudice from the delayed return, citing *People* v. *Couch* (1979) 97 Cal.App.3d 377, 381 [158 Cal.Rptr. 647] and *People* v. *Kirk* (1979) 99 Cal.App.3d 89, 92-95 [160 Cal.Rptr. 184]. Those cases involve warrants which were *executed* but not *returned* to the court within 10 days. They are not applicable to the facts here, which involve a warrant allowing for continual *execution* for 30 days without a judicial determination of continued probable cause.

[9] Phone numbers were obtained both from the pen register and from the phone company's computer "number search" printout, the latter which retrieved toll calls made to Larkin's phone number from the company's billing records.

[10] The two overt acts for which there was insufficient evidence after the suppression ruling apparently depended on evidence provided by Dispoldo and Walker. A total of six overt acts were alleged, and the municipal court found sufficient evidence of the remaining four overt acts.

Walker, Jeli, and Dispoldo testified they placed bets at various phone numbers, including Lenka Larkin's phone number, 585-7388. The 30-day warrant was the first to request a pen register be placed on her phone number. A police officer testified that the pen register information obtained from her phone number indicated bookmaking was taking place from sometime in the middle of August until at least September 22, based on the large number of calls of short duration during a short time span, and their occurrence during a major sporting event.

The above three witnesses' testimony and the phone number information obtained after September 15 were merely cumulative to other ample evidence to support the bookmaking convictions. Two other witnesses, Frank Miceli and Benjamin Hallowell, located as the result of earlier 10-day warrants, testified they called the Larkins' phone number to place bets. Various documents and other items indicative of bookmaking were found at the Larkins' residence. Thus, even if we were governed by California exclusionary rules, the failure to exclude the evidence would have been harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

## IV

■ Lenka Larkin argues there was insufficient evidence to support her conviction, meritlessly asserting the only evidence suggesting guilt was her relationship with Lane Larkin.

Lenka was the subscriber to phone number 585-7388 at Starwood Circle in Chula Vista. A search of the residence in Chula Vista revealed evidence indicating Lenka and Lane lived there (i.e. envelopes addressed to Lane and Lenka with the Starwood Circle address; utility bills in Lenka's name, a rental agreement for the residence signed by Lenka) and evidence that bookmaking activity was being conducted there (i.e. papers with notations indicating wagers on college football games, the phone number for the Caliente Hotline regarding horse races, torn piece of newspaper with baseball scores and notations, lists of baseball teams with notations).

References to a Tourmaline Street residence were found on some of the papers at Starwood Circle. Lenka admitted to paying rent at Tourmaline Street in Pacific Beach. A search of that residence revealed a telephone answering system identical to the one on Starwood Circle in Chula Vista, and a card table set up with a light and a container of pencils and pens.

One of the phone numbers at the Tourmaline Street residence was 272-2120.[11] Witnesses Miceli and Hallowell testified at some point when they called 585-7388 to place bets, they were given the number 272-2120 for future bets. The same male voice identified as Andrew took the bets at both phone numbers. On one occasion when Hallowell called 585-7388 to place a bet, the man identified as Andrew told him to wait; he waited 10 minutes and during that time he heard a female voice read off a series of bets. Later, he talked to that female voice and she also identified herself as Andrew.

When the police arrested Lane and Lenka, they found papers in Lenka's purse with notations commonly used in bookmaking (i.e., a weekly tally sheet of bets). A handwriting expert for the police department compared samples known to be Lane's and Lenka's handwriting with the seized documents. Positive identification of Lenka's handwriting was made on documents found in her purse, including one page of an eight-page document; a two-page tally sheet; and a single sheet of yellow paper. The remaining notations on the papers were either positively identified as, or found to show a similarity to, Lane's handwriting, or found to show a similarity to Lenka's handwriting. Some notations on a two-page document containing bookmaking notations found at the Chula Vista residence were found to show similarities to Lenka's handwriting, with the majority of notations positively identified as Lane's.

There was sufficient evidence to support a finding Lenka was actively participating in the bookmaking activity with Lane, including the fact she was carrying bookmaking documents in her purse, with her handwriting identified on them, and the inferences from the female "Andrew" who answered her telephone to take bets.

### DISPOSITION

The judgment is affirmed.

Wiener, Acting P. J., and Butler, J., concurred.

---

[11] The subscriber to that phone number was named Lucy Johnson. Envelopes with the name Lucy Johnson on them were found at the Chula Visa residence.