[No. D002860. Fourth Dist., Div. One. Sept. 19, 1986.]

THE PEOPLE, Plaintiff and Appellant, v.
RONALD LEE SABO et al., Defendants and Respondents.

**COUNSEL**

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman, Les W. Dubow, D. Michael Ebert and Anthony Lovett, Deputy District Attorneys, for Plaintiff and Appellant.

Robert F. Gusky and Christopher Blake, under appointments by the Court of Appeal, for Defendants and Respondents.

**OPINION**

**BUTLER, J.**—The People appeal an order dismissing criminal proceedings against Ronald Lee Sabo and Angela Marie Zizzo (respondents) after the

court sustained their motions to suppress evidence seized in a search authorized by a warrant issued following a helicopter flight observation of marijuana growing in a backyard greenhouse. Distinguishing *California* v. *Ciraolo* (1986) 476 U.S. 207 [90 L.Ed.2d 210, 106 S.Ct. 1809], validating a search based on fixed wing aircraft observations from an altitude of 1,000 feet of marijuana in plain view growing in a backyard, we affirm.

## I

Sabo and Zizzo lived together in a residence on El Capitan Drive in La Mesa, California. During a routine helicopter patrol mission, Deputy Sheriff Wilson observed what he believed to be marijuana plants growing inside a 15 by 20 foot greenhouse located in the backyard, directly west of respondents' house. Deputy Larry Martin of the narcotics squad then joined Wilson in the helicopter.

Hovering at 400-500 feet, Martin saw the greenhouse. Several roof and side panels were missing. A tall pine tree and heavy vegetation inhibited a direct view into the structure. However, as Wilson circled the helicopter, Martin was able to see marijuana plants growing inside the greenhouse.

Based on Martin's information, a search warrant issued and sheriff's deputies found marijuana in the greenhouse. The court granted respondents' motion to suppress the seized marijuana, holding the aerial surveillance violated their Fourth Amendment rights, and dismissed the action.

## II

At the suppression hearing, the People argued the motion should be denied because aerial overflights and observations do not violate a person's legitimate privacy expectation, Deputies Martin and Wilson were in a public place open to their use at the time of the search, respondents' curtilage is not a protected area, and respondents' expectation the police would not see the marijuana growing in their greenhouse is unreasonable. The court granted the motion, finding: "The area searched (greenhouse) was within the defendant's curtilage. A reasonable expectation of privacy existed. A warrantless overflight constituted an unreasonable search in violation of the Fourth Amendment. The fruits of that unconstitutional search cannot support a warrant."

The court's finding was based on *People* v. *Ciraolo* (1984) 161 Cal.App.3d 1081 [208 Cal.Rptr. 93], to the effect a warrantless aerial surveillance of residences and curtilages wherein a defendant could reasonably entertain

an expectation of privacy violated the Fourth Amendment. (See *People* v. *Cook* (1985) 41 Cal.3d 373 [221 Cal.Rptr. 499, 710 P.2d 299].)

Following oral argument on this appeal, the Supreme Court issued its opinion May 19, 1986, in *California* v. *Ciraolo, supra,* 476 U.S. 207 [90 L.Ed.2d 210, 106 S.Ct. 1809] (hereafter *Ciraolo*), reversing *People* v. *Ciraolo, supra,* 161 Cal.App.3d 1081. We asked the parties to submit additional briefs on the impact of *Ciraolo* here. We examine the record in light of *Ciraolo*.[1]

## A.

*Ciraolo* reaffirms the standard of Fourth Amendment analysis set forth in *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507]: "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' *Katz* v. *United States,* 389 US 347, 360 . . . (1967) (Harlan, J., concurring). Katz posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable? [Citation.]" (*Ciraolo, supra,* 476 U.S. at p. — [90 L.Ed.2d at p. 215].)

In *Ciraolo*, the Supreme Court found, and the state did not challenge, the defendant clearly had manifested his subjective intent and desire to maintain privacy as to his "unlawful agricultural pursuits" (*ibid.*). The high court noted: "It can reasonably be assumed that the 10-foot fence was placed to conceal the marijuana crop from at least street level views. So far as the normal sidewalk traffic was concerned, this fence served that purpose, because [defendant] 'took normal precautions to maintain his privacy.' [Citation.]" (*Ciraolo, supra,* at p. — [90 L.Ed.2d at p. 215].)

---

[1]*People* v. *Cook, supra,* 41 Cal.3d 373, decided in December 1985, squarely holds a warrantless aerial survey leading to issuance of a search warrant under which marijuana plants growing in an enclosed backyard were seized violates article I, section 13 of the California Constitution, our state counterpart to the Fourth Amendment of the United States Constitution. *Cook* was not concerned with the effect of Proposition 8 on the excludability of evidence obtained in violation of article I, section 13, as the events at issue there predated June 8, 1982, the proposition's effective date. (*Id.,* fn. 1, p. 376.)

Here, the events occurred after the adoption of Proposition 8. Relevant evidence though unlawfully obtained under our Constitution may be excluded only if exclusion is required by the United States Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 890 [210 Cal.Rptr. 631, 694 P.2d 744].) *Ciraolo* holds the Fourth Amendment does not require exclusion of evidence seized under a search warrant issued upon information acquired in a warrantless aerial naked-eye observation of the curtilage from a fixed wing aircraft flying at an altitude of 1,000 feet in navigable airspace. We are, of course, bound by *Ciraolo,* if applicable here. (See the dissent of Lucas, J. in *People* v. *Cook, supra,* 41 Cal.3d 373, fn. 1 at p. 386, noting *Cook* was a pre-Proposition 8 case and remarking the majority holding presumably will not affect aerial surveillance conducted after adoption of Proposition 8.)

*Ciraolo* then turns to the second inquiry, whether the expectation of privacy is reasonable. After concluding the yard in *Ciraolo* was part of the curtilage, the high court commented the Fourth Amendment has never been extended "to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares . . ." (*id.* at p. — [90 L.Ed.2d at p. 216]) and held: "The observations by Officers Shutz and Rodriguez in this case took place within public navigable airspace, see 49 USC App § 1304 . . . in a physically nonintrusive manner; from this point they were able to observe plants readily discernable to the naked eye as marijuana. That the observation from aircraft was directed at identifying the plants and the officers were trained to recognize marijuana is irrelevant. Such observation is precisely what a judicial officer needs to provide a basis for a warrant. Any member of the public flying in this airspace who glanced down could have seen everything that these officers observed. On this record, we readily conclude that respondent's expectation that his garden was protected from such observation is unreasonable and is not an expectation that society is prepared to honor." (*Ciraolo, supra,* at p. — [90 L.Ed.2d at p. 217, fn. omitted].)

We examine the facts in our case.

## B.

As in *Ciraolo,* the facts here satisfy the first *Katz* inquiry: the respondents had a subjective expectation of privacy in their greenhouse within the curtilage. We turn to the second, the reasonableness of their expectation of privacy.

In *Ciraolo,* the marijuana growing in the backyard was clearly visible to the naked eye peering from a fixed wing aircraft flying at a 1,000-foot altitude. While the fenced yard effectively shielded the marijuana from the view of the earthbound constable, as well as that of the casual passerby, the eye in the sky is not so inhibited.

"In an age where private and commercial flight in the public airways is routine, it is unreasonable for respondent to expect that his marijuana plants were constitutionally protected from being observed with the naked eye from an altitude of 1,000 feet. The Fourth Amendment simply does not require the police traveling in the public airways at this altitude to obtain a warrant in order to observe what is visible to the naked eye." (*Ciraolo, supra,* at p. — [90 L.Ed.2d at p. 218, fn. omitted].) ▮ Here, the marijuana was cultivated in a greenhouse partially screened by evergreens and from which some roof and side panels were missing. The officer circled

the helicopter at an altitude of some 400 feet over the greenhouse and saw, with unaided eye, through the gaps in the roof, the marijuana plants.

There are factual differences. *Ciraolo* has a fenced backyard open to the skies; marijuana easily visible to an observer from a fixed wing aircraft flying at 1,000 feet in navigable airspace. Here, the greenhoused marijuana was visible only to an eye in a circling helicopter positioned such as to enable a peek at the pot through the gaps.

Respondents argue these factual differences demonstrate a reasonable expectation of privacy, contending *Dow Chemical Co.* v. *United States* (1986) 476 U.S. 227 [90 L.Ed.2d 226, 106 S.Ct. 1819] (hereafter *Dow*), decided the same date as *Ciraolo,* narrows the holding in that case in its application here. *Dow* considered a 2,000-acre, tightly secured chemical manufacturing complex including numerous covered buildings with manufacturing equipment and piping conduits exposed to aerial visual observation. Concluding the open areas of an industrial plant complex with numerous structures spread over an area of 2,000 acres was not analogous to the curtilage of a dwelling and more comparable to an open field, the court held the complex "is open to the view and observation of persons in aircraft lawfully in the public airspace immediately above or sufficiently near the area for the reach of cameras." (*Dow, supra,* at p. — [90 L.Ed.2d at p. 238].) The taking of aerial photographs of the complex from navigable airspace "is not a search prohibited by the Fourth Amendment." (*Ibid.*) *Ciraolo*'s narrow reading is said to be compelled by footnote 4 in the *Dow* opinion referring to the aerial observation of the 2,000-acre complex without physical entry: "We find it important that this is *not* an area immediately adjacent to a private home, where privacy expectations are most heightened. Nor is this an area where Dow has made any effort to protect against aerial surveillance. Contrary to the partial dissent's understanding, post, at —, 90 L.Ed.2d 239, the Court of Appeals emphasized that 'Dow did not take *any* precautions against aerial intrusions, even though the plant was near an airport and within the pattern of planes landing and taking off. If elaborate and expensive measures for ground security show that Dow has an actual expectation of privacy in ground security, as Dow argues, then taking *no* measure for aerial security should say something about its actual privacy expectation in being free from aerial observation.' 749 F2d 307, 312 (CA6 1984) (emphasis added)." (*Dow, supra,* at p. — [90 L.Ed.2d at p. 237.)

We find the suggestion the *Dow* footnote limits the broad sweep of *Ciraolo* not persuasive. First, the Supreme Court concluded in *Dow* the enclosed plant complex "does not fall precisely within the 'open fields' doctrine. The area at issue here can perhaps be seen as falling somewhere between 'open fields' and curtilage, but lacking some of the critical characteristics

of both." (*Id.* at p. — [90 L.Ed.2d at p. 236, fn. omitted].) The footnote reference to the area as not adjacent to a private house highlights the hybrid nature of the complex as "open field-curtilage." Second, the reference to Dow's failure to make any effort to protect against aerial surveillance necessarily relates to the open areas between the enclosed structures, again an elaboration on the hybrid theme. Finally, had the Supreme Court desired to limit the broad brush of *Ciraolo,* issued the same day as *Dow,* the canvas of that opinion was still wet and the artist was available to touch up the landscape.

While the naked-eye observation of marijuana growing in an open backyard from Ciraolo's fixed wing aircraft flying at 1,000 feet on a straight and narrow course in navigable airspace does not violate a reasonable expectation of privacy, respondents assert a helicopter hovering at 400 feet, positioned to peer through gaps in a roof, intrusively invades and impermissibly violates a reasonable expectation of privacy. *Ciraolo, supra,* 476 U.S. 207, emphasizes the aerial surveillance there considered occurred "from an aircraft lawfully operating at an altitude of 1,000 feet" (at p. — [90 L.Ed.2d at p. 216]). The Fourth Amendment does not require "law enforcement officers to shield their eyes when passing by a home on public thoroughfares" (*ibid.*) or "preclude an officer's observations from a public vantage point where he has a right to be" (*ibid.*). The officers' observations "took place within public navigable airspace" (*id.* at p. — [90 L.Ed.2d at p. 217]). Concerning the dissent's reference to Justice Harlan's concurrence in *Katz* [v. *United States, supra,* 389 U.S. 347], observing the Fourth Amendment should not be limited to a proscription only of physical intrusions into private property, the majority in *Ciraolo* notes the potential for future electronic developments and interference with private communications "were plainly not aimed at simple visual observations from a public place" (*id.* at p. — [90 L.Ed.2d at p. 217].) The court's holding is plainly stated:[2] "The Fourth Amendment simply does not require the police traveling in the public airways at this altitude [1,000 feet] to obtain a warrant in order to observe what is visible to the naked eye" (*Ciraolo, supra,* at p. — [90 L.Ed.2d at p. 218]).

---

[2]Justice Powell's dissent, joined by Justices Brennan, Marshall and Blackmun, asserts the majority holding rests on the proposition a view from navigable airspace of the curtilage is not offensive to the Fourth Amendment: "Respondent contends that the police intruded on his constitutionally protected expectation of privacy when they conducted aerial surveillance of his home and photographed his backyard without first obtaining a warrant. The Court rejects that contention, holding that respondent's expectation of privacy in the curtilage of his home, although reasonable as to intrusions on the ground, was unreasonable as to surveillance from the navigable air space. In my view, the Court's holding rests on only one obvious fact, namely, that the air space generally is open to all persons for travel in airplanes. The Court does not explain why this single fact deprives citizens of their privacy interest in outdoor activities in an enclosed curtilage." (*Ciraolo, supra,* at p. — [90 L.Ed.2d at p. 219].)

*Dow,* concluding the open area of the industrial plant complex with numerous plant structures over an area of 2,000 acres is comparable to an open field, holds that complex "is open to the view and observation of persons in aircraft lawfully in the public airspace immediately above or sufficiently near the area for the reach of cameras" (*Dow, supra,* at p. — [90 L.Ed.2d at p. 238]) and "the taking of aerial photographs of an industrial plant complex from navigable airspace is not a search prohibited by the Fourth Amendment" (*ibid.*).

Clearly, *Ciraolo* and *Dow* authenticate aerial surveillance taken within navigable airspace. There is a public right of freedom of transit through the navigable airspace of the United States. (49 U.S.C. § 1304.) Navigable airspace is that airspace above the minimum altitudes of flight prescribed by regulations issued by the Civil Aeronautics Board. (49 U.S.C. § 1301(29).) The minimum altitude for a fixed wing aircraft over a congested area is 1,000 feet and 500 feet above the surface in an area other than a congested area. Over open water or in sparsely populated areas, an aircraft may not be operated closer than 500 feet to any person, vessel, vehicle or structure (14 C.F.R. § 91.79(b) & (c) (1986)).

Helicopters may be operated at less than the minimum applicable to aircraft if the operation is conducted "without hazard to persons or property on the surface" (14 C.F.R. § 91.79(d) (1986)).

As we have seen, *Ciraolo*'s fixed wing aircraft flight observation at 1,000 feet within the public navigable airspace is not intrusive of privacy. The validated photographs in *Dow* were taken from an aircraft flying at altitudes of 1,200, 3,000 and 12,000 feet, all within navigable airspace. (*Dow, supra,* 476 U.S. at p. — [90 L.Ed.2d at p. 232].) ■ Public navigable airspace as to helicopters is not defined as a function of altitude. The regulations simply permit operation of helicopters at less than the minimum altitudes applicable to aircraft if the operation is conducted without hazard to earthbound persons or property (14 C.F.R. § 91.79(d) (1986)). While helicopters may be operated at less than minimum altitudes so long as no hazard results, it does not follow that such operation is conducted within navigable airspace.[3] The plain meaning of the statutes defining navigable airspace as that

---

[3]The courts have considered navigable airspace in the context of eminent domain. *United States* v. *Causby* (1946) 328 U.S. 256 [90 L.Ed. 1206, 66 S.Ct. 1062], declared federal statutes, together with administrative regulations, placed airspace above prescribed minimum altitudes of flight in the public domain. Flights within the "immediate reaches" of the surface of a landowner's property and below the minimum prescribed altitude are not within the navigable airspace dedicated to public use and a compensable taking of an easement may result on a showing of an interference with actual use of the land (see *Pueblo of Sandia* ex rel. *Chaves* v. *Smith* (10th Cir. 1974) 497 F.2d 1043, 1045). The fact that flights occur within navigable airspace does not immunize the owner and operator of an airport for failure

airspace above specified altitudes compels the conclusion helicopters operated below the minimum are not in navigable airspace. The helicopter hovering above the surface of the land in such fashion as not to constitute a hazard to persons or property is, however, lawfully operated. We next inquire whether such lawful operation equates with navigable airspace to authorize the aerial surveillance approved in *Ciraolo* and *Dow*.

We judicially notice the unique capabilities of the helicopter to gambol in the sky—turning, curtsying, tipping, hummingbird-like suspended in space, ascending, descending and otherwise confounding its fixed wing brethren doomed to fly straight, turn in caution and glidingly descend. While a helicopter may be lawfully operated in the performance of its various capabilities, i.e., present no hazard to person or property, its usage as a platform for aerial surveillance conducted below minimum flight levels and not in navigable airspace, does not per se validate the search under the *Ciraolo-Dow* rationale—the view from the aircraft in navigable airspace is not an invasion of a reasonable expectation of privacy.

Those cases carefully posit the observation must be from navigable airspace. They do not address an aerial surveillance in airspace not dedicated to public use and in which the underlying property owner has interests sufficient to be subject to a compensable taking.

We conclude *Ciraolo* does not declare a rule to govern aerial surveillance of the curtilage in all circumstances and at any altitude and from any platform. We come reluctantly to this conclusion because of the obvious difficulties it creates. ■ Our reading of *Ciraolo* and *Dow* results in a mechanical application of the rule there announced—the naked-eye view from navigable airspace does not offend the Fourth Amendment, whatever the circumstances of the view. We concede that consideration of aerial surveillance by helicopter outside navigable airspace will again invoke myriad factual variations on the theme and require a case-by-case analysis to determine whether the surveillance offends Fourth Amendment precepts. Also, our conclusion creates a two-tiered concept. *Ciraolo-Dow* governs aerial surveillance conducted within and from navigable airspace. Such surveillance outside navigable airspace continues to call for traditional inquiry into reasonable privacy expectation. This result is not in derogation of Proposition 8 requirements relevant evidence be admitted. Under *Ciraolo-*

---

to designate the land and airspace necessary to provide an adequate approachway. (*Aaron v. City of Los Angeles* (1974) 40 Cal.App.3d 471, 487 [115 Cal.Rptr. 162].)

Flights of aircraft at altitudes below 100 feet, between 100 and 500 feet and over 500 feet in navigable airspace and at unspecified altitudes may result in a taking of property. (Annot., Airport Operations or Flight of Aircraft as Constituting Taking or Damaging of Property, 22 A.L.R.4th 863, §§ 5-8, pp. 876-901.)

*Dow,* such evidence is limited to that acquired from a view had from navigable airspace. Those cases thus do not concern views outside that federal aerial enclave.

Finally, our conclusion recognizes the reality of helicopter aerial surveillance. To say any sighting from a helicopter in non-navigable airspace validates a search warrant sanctions a broad range of aerial acrobatics performed in lawful manner but admittedly intrusive, such as an interminable hovering, a persistent overfly, a treetop observation, all accompanied by the thrashing of the rotor, the clouds of dust, and earsplitting din. Views from navigable airspace are far removed from the situs observed. The lawfully operated helicopter need stand back only such distance as not to hazard persons or property. Surely, its subsequent antics are subject to the kind of scrutiny called for by *People* v. *Cook, supra,* 41 Cal.3d 373 at pp. 376-377.

■■■ On this record, we conclude the helicopter views from non-navigable airspace of the marijuana glimpsed through the missing panels of the greenhouse constituted an unreasonable invasion of respondents' expectation of privacy, and the seizure of the contraband under the warrant issued pursuant to the helicopter viewing violated respondents' Fourth Amendment rights.

Affirmed.

Wiener, Acting P. J., and Work, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 26, 1986.