[No. A021591. First Dist., Div. One. Oct. 9, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY LEE ROBERTS, Defendant and Appellant.

COUNSEL

Susan B. Jordan and Mary Ann Villwock for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eugene Kaster and Ronald D. Smetana, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RUSHING, J.* —Defendant was charged with cultivation of marijuana and possession of marijuana for sale. After his motion to suppress was denied, defendant proceeded to trial, but during jury selection he pled guilty. He was sentenced to two years in prison for cultivation.[1] Execution was suspended, and he was placed on probation for three years upon condi-

---

*Assigned by the Chairperson of the Judicial Council.

[1] Defendant was sentenced to two years for possession of marijuana for sale. The sentence was stayed pending appeal, the stay to become permanent upon completion of the sentence imposed on count one.

tion, inter alia, that he serve one year in the county jail. Defendant now appeals.

## FACTS

On October 3, 1980, Sergeant Gunderson, Detective Sergeant Phillips, and two other officers from the Sonoma County Sheriff's Office were flying over a rural area of the county. They were on an unrelated mission, but they decided to fly over defendant's property to look for marijuana. This decision was made because over the past two months Sergeant Gunderson had observed growing marijuana plants on the property. When first seen, the plants were two or three feet high and planted outside a large greenhouse structure. Over time, the plants had been moved into the greenhouse.

On the afternoon of October 3, the officers flew over defendant's property in a helicopter. They flew at about three hundred feet above ground and circled the property for about three or four minutes. The area under surveillance was a cleared compound area with a house trailer and a large greenhouse. The greenhouse was covered with white opaque plastic material and was connected to the house trailer with a fiberglass-covered breezeway.

At the south end of the compound, the officers saw marijuana growing outside. In addition, the officers saw more plants inside the greenhouse. But the officers could not see clearly through the plastic covering. One end of the greenhouse was open, however, covered only by a four-foot sheet of plywood. By positioning the helicopter just so, the officers could see through the opening and identify what appeared to be marijuana plants.

Based on these observations, Detective Sergeant Phillips prepared an affidavit and obtained a search warrant. Defendant challenged the warrant on several grounds, but his motion to suppress was denied. On appeal, defendant renews his challenges to the validity of the warrant.

## DISCUSSION

### I. The Aerial Search

Defendant first argues that the helicopter overflight was an invasion of his expectation of privacy and, hence, the observations made by the officers could not be used to support the search warrant. The argument has considerable merit.

In *People* v. *Mayoff* (1986) 42 Cal.3d 1302 [233 Cal.Rptr. 2, 729 P.2d 166], the Supreme Court upheld a random aerial search of open fields

conducted for the purpose of identifying plots of land upon which marijuana was being cultivated. The court recognized, however, that under the California Constitution there is a great expectation of privacy in the "curtilage." (*Id.,* at pp. 1310-1311.) Indeed, the court reaffirmed its holding in *People* v. *Cook* (1985) 41 Cal.3d 373 [221 Cal.Rptr. 499, 710 P.2d 299], that the police cannot defeat the legitimate expectation of privacy within a residential curtilage by "spying at will on a private yard from an aircraft." (42 Cal.3d at p. 1311; but see *California* v. *Ciraolo* (1986) 476 U.S. 207 [90 L.Ed.2d 210, 106 S.Ct. 1809] [under federal Constitution, no expectation of privacy from an aerial search].)

In both *Cook* and *Mayoff,* the court accepted the definition of "curtilage" stated by the United States Supreme Court in *Oliver* v. *United States* (1984) 466 U.S. 170, 180 [80 L.Ed.2d 214, 225, 104 S.Ct. 1735]: "the land immediately surrounding and associated with the home." ■ More recently, the United States Supreme Court has explained that to determine whether an area falls within the protected curtilage the courts should look to four factors: the proximity of the area to the home; whether the area is included within an enclosure surrounding the home; the nature of the uses to which the area is put; and the steps taken by the resident to protect the area from observations by passersby. (*United States* v. *Dunn* (1987) 480 U.S. 294 [94 L.Ed.2d 326, 108 S.Ct. 1134] [barn not within the curtilage].)

■ There seems little doubt that the area under surveillance here was within the protected residential curtilage. The cleared compound area was surrounded by a fence. Inside the fence was a house trailer, which was the only residence in the vicinity. The greenhouse was attached to this house trailer by a covered breezeway. The greenhouse was apparently being used for growing plants, an essentially domestic activity. The greenhouse was covered with an opaque plastic material which prevented clear observations of the plants within.

Of course, the *Mayoff* court explained that the aerial observation of a home and curtilage is not unlawful if *incidental* to the search of open fields. The determining factor is whether the focus of the examination was on a particular curtilage or on the open fields. (*People* v. *Mayoff, supra,* 42 Cal.3d at pp. 1316-1317.) Here, however, the officers' observations were focused on the greenhouse—an area within the protected curtilage.

Consequently, we conclude the present case is controlled by *Cook* and the aerial surveillance of defendant's property was unconstitutional.

## II.  Navigable Air Space

There is another basis for holding the aerial surveillance invalid: the low altitude of the helicopter. In *People* v. *Sabo* (1986) 185 Cal.App.3d 845 [230

Cal.Rptr. 170], certiorari denied, 481 U.S. 1058 [95 L.Ed.2d 855, 107 S.Ct. 2200], police officers in a helicopter observed marijuana plants growing in a backyard greenhouse from which several roof and side panels were missing. The officers were able to make their observations only by circling the defendant's property and hovering at about 400-500 feet. The court held the surveillance was an unreasonable invasion of privacy.

*Sabo* arose after Proposition 8; hence, the court was bound by *California v. Ciraolo, supra,* 476 U.S. 207 [90 L.Ed.2d 210, 106 S.Ct. 1809], and not by *Cook.* Yet, the *Sabo* court distinguished *Ciraolo* on the following grounds: there, the fenced backyard was open to the skies, and the marijuana was easily visible from a fixed-wing aircraft flying at 1,000 feet in navigable airspace; in *Sabo,* in contrast, the greenhoused marijuana was visible only to an eye in a circling helicopter positioned so as to enable a peek through the gaps. The court held that such low-altitude surveillance, being in nonnavigable airspace, was an intrusion into the defendant's expectation of privacy.

The present case is identical in all material respects. The officers here flew even lower—at about 300 feet. They circled over defendant's property for three or four minutes trying to get a look at the plants inside the greenhouse. The officers had to peek through an opening at one end of the greenhouse which was half covered with plywood. The intrusion was just as great as in *Sabo.*

In light of our ruling that the aerial overflight was invalid, we need not reach the other issues raised by defendant: namely, whether the affidavit fails to set forth sufficient facts to show the basis for the officer's belief that the plants were marijuana; and whether there was probable cause to search the house trailer.

The judgment is reversed.

Newsom, J., concurred.

**ELKINGTON, Acting P. J.**—I dissent.

Law enforcement agents of Sonoma County and perhaps elsewhere, in their effort to enforce the state's law concerning the cultivation of marijuana, are constantly bedeviled by conflicting opinions of reviewing courts. Our majority opinion of today adds to the confusion.

The events leading to the conviction of this case occurred in *1980,* before the amendment of California's Constitution, June 8, 1982, by adding article I, section 28, commonly known as Proposition 8. The majority opinion, as I

read it, purports to state existing law and it may reasonably be so accepted by the Sonoma County authorities upon whom it is binding.

But since the adoption of Proposition 8, federal law is now controlling on matters such as that before us. *In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744], states: "[A]lthough section 1538.5 continues to provide the exclusive procedure by which a defendant may seek suppression of evidence obtained in a search or seizure that violates 'state constitutional standards,' a court may exclude the evidence on that basis *only* if exclusion is also mandated by the federal exclusionary rule applicable to evidence seized in violation of the Fourth Amendment." (Our italics.)

The majority opinion of our court says that the low altitude of the helicopter "at about 300 feet" above the ground, rendered its occupant's view of growing marijuana constitutionally impermissible. Yet federal authority states that it is *not*.

The Federal Aviation Administration (formerly Civil Aeronautics Authority) has promulgated a regulation (14 C.F.R., ch. 1, § 91.79(d)) which states: "Helicopters may be operated at less than the minimums prescribed [for airplanes] in paragraph (b) [1,000 feet] or (c) [500 feet] of this section if the operation is conducted without hazard to persons or property on the surface."

Here the trial court impliedly found on substantial evidence that the helicopter operation was "conducted without hazard to persons or property on the surface." (See *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)* In *People* v. *Sabo* (1986) 185 Cal.App.3d 845, 853 [230 Cal.Rptr. 170], the only reasonably factually similar case, where the reviewing court affirmed, the trial court had impliedly found a helicopter operation *not* to be "conducted without hazard to persons or property on the surface."

Referring to earlier and similar rules the United States Supreme Court has said: "The navigable airspace which Congress has placed in the public domain is 'airspace above the minimum safe altitudes of flight prescribed by the Civil Aeronautics Authority.'" (*United States* v. *Causby* (1946) 328 U.S. 256, 263 [90 L.Ed. 1206, 1211, 66 S.Ct. 1062].)

---

* " 'A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the [trial] court sitting as a finder of fact.' . . . In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw *factual inferences,* is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or *implied,* must be upheld if they are supported by substantial evidence." (Our italics.) (*People* v. *Lawler, supra,* 9 Cal.3d 156, 160.)

" 'Navigable air space' is defined as 'air space above the minimum safe altitude of flight prescribed by [the Civil Aeronautics Authority].' . . . The public has a right to travel in this air space with the same freedom and the same immunity as it has to travel the public highways or navigable waters." (*Aaron* v. *United States* (Ct.Cl. 1963) 311 F.2d 798, 801.)

And Congress has enacted that: "There is recognized and declared to exist in behalf of any citizen of the United States a public right of freedom of transit through the navigable airspace of the United States." (49 U.S.C.A. § 1304.)

And: "State legislation [and of course judicial authority] purporting to deny access to navigable air space would therefore constitute a forbidden exertion of the power which the federal government has asserted." (*United States* v. *City of New Haven* (2d Cir. 1974) 496 F.2d 452, 454.)

More recently the United States Supreme Court decided *California* v. *Ciraolo* (1986) 476 U.S. 207, 213-214 [90 L.Ed.2d 210, 216-217, 106 S.Ct. 1809, 1812-1813]). "[The court held:] The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares. Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible. . . . 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.' . . . [¶]Such observation is precisely what a judicial officer needs to provide a basis for a warrant. Any member of the public flying in this airspace who glanced down could have seen everything that these officers observed. On this record, we readily conclude that respondent's expectation that his garden was protected from such observation is unreasonable and is not an expectation that society is prepared to honor."

Since *California* v. *Ciraolo* dealt with a heavily populated urban area and the case before us concerns sparsely settled rural country, that case seems doubly apposite here.

And, while the United States Supreme Court in *California* v. *Ciraolo* has stated (476 U.S. at p. 213 [90 L.Ed.2d at p. 217, 106 S.Ct. at p. 1813]): "[S]uch observation is precisely what a judicial officer needs to provide a basis for a warrant," my colleagues have told the Sonoma County law enforcement authorities that it is *not*.

And, adding to the confusion the majority, relying on *People* v. *Mayoff* (1986) 42 Cal.3d 1302, 1316-1317 [233 Cal.Rptr. 2, 729 P.2d 166], say:

"[T]he *Mayoff* court explained that the aerial observation of a home and curtilage is not unlawful if *incidental* to the search of open fields. The determining factor is whether the focus of the examination was on a particular curtilage or on the open fields." Yet the utterance was of three justices (Grodin, Mosk and Reynoso), while two others concurred in the result only and the third dissented. Under well-known rules, in case of an equally divided court on appeal, the findings and judgment of the trial court will prevail.

Additionally I, and apparently my colleagues, have found no authority holding that a helicopter overflight, under the facts and circumstances of this case, is unreasonable or an invasion of privacy, and therefore proscribed by the Fourth Amendment. I would defer, to the greater expertise of the Federal Aviation Administration, and to the federal judiciary, and hold that even under California's Constitution prior to Proposition 8, the officers of this case committed no transgression.