[No. G004523. Fourth Dist., Div. Three. Nov. 30, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN ALLEN MORGAN, Defendant and Appellant.

**COUNSEL**

Dennis LaBarbera for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael D. Wellington, Rudolf Corona, Jr., and Nancy L. Palmieri, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CROSBY, J.**—John Allen Morgan pleaded guilty to possession of cocaine for sale after his motion to suppress evidence was denied. Claiming an unannounced police entry into his home was unlawful, he appeals. We agree and reverse.

I

At 2 a.m. on November 20, 1985, a neighbor telephoned police to report loud noises and shattering glass at Morgan's San Clemente home. Officer Lervold and Sergeant Falk received the dispatch and arrived at the residence, a house with attached garage, within minutes. The property was

surrounded by a six-foot fence with a locked gate. They heard, but could not see, someone yelling at the rear of the home.

The officers raised the closed but unlocked garage door, walked through the garage, and entered the rear yard through a side door. Once there, they saw a slightly open French door, with a shattered pane, and broken glass on the ground. Lervold approached the door and illuminated the room inside with his flashlight. A man was sitting on a mattress swaying in place, and the room was in disarray: A chest of drawers was overturned; and a lamp, ashtrays, and money were scattered on the floor. The drawers and their contents had not been disturbed, however. Suspecting a burglary was in progress, the officers entered the home and handcuffed the man.

A third officer responding to the dispatch searched for other persons. He found Morgan, who said he lived there. The officer asked for identification and followed Morgan into a bedroom. En route he observed in plain sight in the living room a partially burned marijuana cigarette, unburned marijuana residue, a "cocaine sifter" with a white crystalline substance on it, a paper bindle containing a white substance, and a tablespoon with a white powder on it. In an open drawer in the bathroom he noticed a small vial, razor blades, "coke spoon," mirror, parts of another cocaine sifter, a nearly empty plastic baggie with a white powdery substance, and other plastic baggies.

Morgan was arrested at the scene for possession of a controlled substance for sale. Based on the officers' observations, a search warrant was obtained and the drugs and paraphernalia seized.

In the superior court Morgan moved to suppress the evidence seized from his home. Among other arguments, he maintained the officers did not have probable cause to suspect a burglary was in progress when they entered the garage and violated the knock-notice provisions of Penal Code section 844 in so doing. Citing the uncontradicted testimony that the officers believed a burglary was being committed based on their observations in the enclosed backyard, i.e., the slightly open door and the broken glass, the superior court found there was sufficient cause to enter the *home* without complying with section 844 and denied the motion.

## II

■ Penal Code section 844, the codified constitutional knock-notice requirement, is excused when there is probable cause to suspect a burglary is taking place. (*People* v. *Solario* (1977) 19 Cal.3d 760 [139 Cal.Rptr. 725, 566 P.2d 627]; *People* v. *Cook* (1977) 69 Cal.App.3d 686 [138 Cal.Rptr. 263].) ■ And we agree with the superior court that there was sufficient

probable cause to suspect a burglary existed from the vantage point of the backyard. The problem is this: The trial court appears to have focused on the wrong entry. Officer Lervold, the only officer who testified concerning the entry via the garage, candidly conceded the officers did not then suspect a burglary was occurring. When asked, "[Y]ou didn't think there was a burglary going on?", he stated, "I didn't know at that time." He added, "It appeared that there was somebody on the other side [of the garage] that we needed to contact. Whether there was an emergency at that time, I didn't know." Thus, the evidence before the superior court was that the officers had not yet formed the opinion a burglary was in progress or that they were confronted with an emergency when they entered the attached garage.

■ It is well settled that a "garage[] 'under the same roof' with the living quarters, 'functionally' connected therewith, and an 'integral part' thereof, is part of an 'inhabited dwelling house' . . . . [Citations.] Even a *carport*, with three sides enclosed and the fourth open to the weather, has been deemed part of an 'inhabited dwelling house.' [Citation.]" (*People* v. *Zelaya* (1987) 194 Cal.App.3d 73 [239 Cal.Rptr. 289].) ■ Accordingly, since the officers concededly did not have probable cause *and* a search warrant at that time or some exigency excusing the warrant requirement, the entry into the garage was unlawful for that reason alone. Moreover, had they had a warrant, in the absence of some emergency or similar justification, the entry would not be legally defensible. ■ Police are required to perform the knock-notice ritual at a closed garage door before entering, warrant or not. (Pen. Code, §§ 844, 1531; *People* v. *Gallo* (1981) 127 Cal.App.3d 828, 839 [179 Cal.Rptr. 662]; *People* v. *Bruce* (1975) 49 Cal.App.3d 580, 587 [122 Cal.Rptr. 648]; *People* v. *Superior Court* (*Arketa*) (1970) 10 Cal.App.3d 122, 126-127 [89 Cal.Rptr. 316]; LaFave, 2 Search and Seizure (2d ed. 1987) § 4.8(b), p. 276.)

■ It is of no moment that the officers had probable cause to suspect a burglary once they were inside the yard. Those observations were made from a place they had no lawful right to be by reason of the warrantless entry into the yard via the garage, as well as the violation of Penal Code section 844. Consequently, the evidence should have been suppressed. (Cf. *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33].)

■ Moreover, were the prosecution to present the argument, which it never has, that the observations in the yard were not a product of the unlawful passage through the garage because the officers did not obtain any evidence or additional probable cause inside and could have seen the same things by simply climbing the fence, the outcome would be the same. Although knock-notice requirements generally do not apply to fences (*People*

v. *Mayer* (1987) 188 Cal.App.3d 1101, 1109-1110 [233 Cal.Rptr. 832]; *People* v. *Bencomo* (1985) 171 Cal.App.3d 1005, 1015-1018 [217 Cal.Rptr. 826]), the fenced yard in this case was clearly part of the curtilage and the home's zone of privacy. (Cf. *United States* v. *Dunn* (1987) 480 U.S. 294 [94 L.Ed.2d 326, 107 S.Ct. 1134] [climbing fence and peering into open barn door lawful because barns are not part of the curtilage].) Police observations into a residence from such a location, without warrant or some exception to the warrant requirement, would not be proper, however access might be obtained. (*People* v. *Roberts* (1987) 195 Cal.App.3d 479 [240 Cal.Rptr. 658]; *People* v. *Sabo* (1986) 185 Cal.App.3d 845 [230 Cal.Rptr. 170], cert. den., 481 U.S. 1058 [95 L.Ed. 2d 855, 107 S.Ct. 2200].)

The judgment is reversed and the superior court is directed to grant the Penal Code section 1538.5 motion and quash the search warrant obtained as a fruit of the unlawful search.

Wallin, Acting P. J., and Taylor, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied March 16, 1988. Panelli, J., was of the opinion that the petition should be granted.

---

* Assigned by the Chairperson of the Judicial Council.