[No. A037010. First Dist., Div. Four. Feb. 11, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCENT MICHAEL ROMO, Defendant and Appellant.

COUNSEL

R. Charles Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Christopher J. Wei and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

SABRAW, J.—Defendant was charged with one count of cultivating marijuana (Health & Saf. Code, § 11358), one count of possessing marijuana for sale (Health & Saf. Code, § 11359) and one count of possessing cocaine. (Health & Saf. Code, § 11350.) He pleaded not guilty to each count. At his preliminary hearing he moved to suppress the evidence against him (Pen. Code, § 1538.5) arguing it was the fruit of an illegal aerial overflight. The motion was denied.

Defendant renewed his motion to suppress in the superior court, again raising the issue of the illegal aerial overflight, and further arguing the officers' subsequent entry into his house violated the "knock-notice" provisions of Penal Code section 1531. The motion was denied.

Defendant then withdrew his not guilty plea and pleaded guilty to the charges involving cultivating marijuana and possession of cocaine. The other count was dismissed. Defendant was granted 3 years probation on conditions which included serving a 180-day jail term in county jail.

On appeal he argues: (1) the police overflight of his home was unconstitutional; and (2) the search warrant obtained subsequent to the overflight was executed in an unlawful manner. We affirm.

### I. FACTS AND PROCEDURAL HISTORY

Based on anonymous reports of heavy foot traffic in and out of defendant's residence Officer Torres, on August 21, 1985, conducted a helicopter overflight of the City of Ukiah, including defendant's house.[1] The flight was at an altitude of no less than 500 feet. Without visual or optical aids he saw what he believed to be marijuana growing in a fenced-in area of the yard. He had the pilot circle back and pictures were taken. Officer Torres next obtained permission from the property owner north of defendant's residence to walk on his property. Standing in the neighbor's field the officer was able to see the tops of several marijuana plants over a five-foot wire

---

[1] At the preliminary hearing there was some discussion over whether the flight was over "open space" or residential property. However, it is clear from the testimony that the plants viewed were part of a normal residential house and lot.

fence which surrounded defendant's backyard. At the time he was approximately 35 feet from defendant's property. The officer also testified that the marijuana was covered on three sides by a six-foot bamboo fence, but the officer was able to view the plants through the gap on the south side. Based on this information the officer obtained a search warrant for the house.

On September 4 Officer Torres and his supervisor, Near, along with two uniformed officers arrived at defendant's home to execute the warrant. As they approached the house they encountered defendant's mother, who had just driven a car into the driveway. The two uniformed officers detained her while Torres and Near continued toward the house. As they approached, a young woman came out of the house and stood on the porch. She identified herself as defendant's sister, and said she lived there with her brother. Torres told her he was a police officer, had a search warrant for the house and wished to see defendant. She said "she would get him [i.e. her brother] or something along that line." The officers then followed her into the house. They encountered defendant as he entered the front room from the rear of the house. Torres told him they had a search warrant for the marijuana plants. Defendant directed them to the backyard. The subsequent search resulted in the seizure of six marijuana plants, approximately $1,800 in cash, a small amount of cocaine, fifteen ounces of marijuana, grow lights, bags and a triple beam scale.

## A. Aerial Overflight

Defendant, relying on *People* v. *Sabo* (1986) 185 Cal.App.3d 845 [230 Cal.Rptr. 170], argues the helicopter overflight of his backyard violated his Fourth Amendment rights. In *Sabo* a sheriff in a helicopter, hovering approximately 400 to 500 feet above the defendant's yard, spotted marijuana plants growing in a greenhouse. However, heavy vegetation prevented a direct view, and the sheriff had to peer through missing panels on the greenhouse to actually spot the plants. The court found this activity violated defendant's reasonable expectation of privacy. Thus, the contraband seized under the warrant issued pursuant to the helicopter surveillance was suppressed.

In reaching its conclusion the court found the United States Supreme Court case of *California* v. *Ciraolo* (1986) 476 U.S. 207 [90 L.Ed.2d 210, 106 S.Ct. 1809] to be inapplicable and thus applied the "traditional inquiry into reasonable privacy expectation," referring to the California Supreme Court case of *People* v. *Cook* (1985) 41 Cal.3d 373 [221 Cal.Rptr. 499, 710 P.2d 299].

Although the result in *Sabo* appears correct, we find its reasoning questionable. In particular, its reading of *Ciraolo* seems unduly limiting.[2] In *Ciraolo* the police flew in a fixed wing aircraft over the defendant's yard after receiving an anonymous tip he was growing marijuana there. From an altitude of 1,000 feet the officers identified marijuana plants. Pictures were taken, and a search warrant was later obtained. Defendant argued the warrantless aerial observation of his yard violated the Fourth Amendment.

The court applied the two-part test of *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507]. "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' [Citation] . . . [F]irst, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" (*California* v. *Ciraolo, supra,* 476 U.S. at p. 211 [90 L.Ed.2d at p. 215, 106 S.Ct. at p. 1811].) The court first found that defendant had manifested a subjective expectation of privacy in the yard simply by erecting a 10-foot fence which obscured a public view of his yard from the ground. However, it held that this expectation was not one society would be willing to accept as reasonable. As the court stated, "Any member of the public flying in this airspace who glanced down could have seen everything that these officers observed." (*California* v. *Ciraolo, supra,* 476 U.S. at pp. 213-214 [90 L.Ed.2d at p. 217, 106 S.Ct. at p. 1813].) Furthermore, the observations were done "in a physically nonintrusive manner" and with the "naked eye." (*Ibid.*)

The *Sabo* court found the fact that the Supreme Court stated the plane was in "navigable airspace" when the observations were made to be a crucial factor in the high court's holding. It concluded that *Ciraolo* "does not declare a rule to govern aerial surveillance of the curtilage in all circumstances and at any altitude and from any platform." Rather it simply pronounces that "the naked-eye view from *navigable airspace* does not offend

---

[2]The United States Supreme Court denied certiorari with the Chief Justice and Justice White dissenting. Justice White wrote, "The Court of Appeals' holding that the helicopter was not in navigable airspace is questionable, and even if this is technically correct it remains true, as the court conceded, that the helicopter was lawfully positioned when the deputy observed the marijuana in respondents' greenhouse. While it is certainly possible that helicopter surveillance could be unreasonably intrusive on account of interminable hovering, raising clouds of dust, creating unreasonable noise, and so forth, nothing in the record indicates that any such factor was present in this case. The decision below is a highly questionable interpretation of our decision in *California* v. *Ciraolo.* I would grant certiorari." (*California* v. *Sabo* (1987) 476 U.S. 207 [95 L.Ed.2d 855, 856, 107 S.Ct. 2200].)

We note this identical issue is presently before the Supreme Court via a Florida Supreme Court case. (*Riley* v. *State* (Fla. 1987) 511 So.2d 282.) There the Florida court found aerial surveillance of the defendant's greenhouse from a helicopter at a height of 400 feet constituted a search and a violation of his privacy rights.

the Fourth Amendment, whatever the circumstances of the view." (*People v. Sabo, supra,* 185 Cal.App.3d at p. 853.) (Italics added.)

Although the *Ciraolo* court did state that the plane was in navigable airspace, we do not read the opinion to mean that the case *only* applies to helicopters if they are flying at an altitude of 1,000 feet. Rather the court appeared to emphasize this fact to make the point that the plane had a right to be where it was in observing the plants. As was stated in the opinion, "Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations *from a public vantage point where he has a right to be* and which renders the activities clearly visible." (*California v. Ciraolo, supra,* 476 U.S. at p. 213 [90 L.Ed.2d at p. 216, 106 S.Ct. at p. 1812].) (Italics added.)

We also question the *Sabo* court's conclusion that a helicopter flying at 400-500 feet is not within "navigable airspace." The court began "Navigable airspace is that airspace above the minimum altitudes of flight prescribed by regulations issued by the Civil Aeronautics Board. (49 U.S.C. § 1301(29).)" For a fixed wing aircraft over a congested area this is 1,000 feet. (14 C.F.R. § 91.79(b).) However, helicopters may be operated at less than the minimum altitude "if the operation is conducted 'without hazard to persons or property on the surface.'" (14 C.F.R. § 91.79(d).) The court concluded "the plain meaning of the statutes defining navigable airspace as that airspace above specified altitudes compels the conclusion helicopters operated below the minimum are not in navigable airspace." (*People v. Sabo, supra,* 185 Cal.App.3d at pp. 852-853.) This conclusion is in part based on the court's conclusion that a helicopter flying at 400-500 feet is not in airspace dedicated to public use as defined under eminent domain law. (*Id.* at p. 852, fn. 3.)

The court's conclusion, that because helicopters do not have minimum altitude limitations, they are not flying in navigable space when operating lawfully, is puzzling. In fact certain minimum altitudes do exist for helicopters. For example 14 Code of Federal Regulations, section 135.203 reads "Except when necessary for takeoff and landing, no person may operate under VFR - . . . (b) A helicopter over a congested area at an altitude less than 300 feet above the surface." (See also the dis. opn. of Elkington, J., in *People v. Roberts* (1987) 195 Cal.App.3d 479, 483-486 [240 Cal.Rptr. 658].) Also there is no question, as even the *Sabo* court admitted, that the helicopter was operating lawfully. As just mentioned, *Ciraolo* requires no more.

Lastly we question the *Sabo* court's citation to *People v. Cook, supra.* In concluding, the court, in reference to the helicopter, stated, "Surely, its

subsequent antics are subject to the kind of scrutiny called for by *People* v. *Cook, supra,* 41 Cal.3d 373 at pp. 376-377." (*People* v. *Sabo, supra,* 185 Cal.App.3d at p. 854.) However, *Cook* was a case decided by the California Supreme Court applying pre-Proposition 8 law. Evidence obtained in violation of the California Constitution can now be excluded only if required by the United States Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 890, 896 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Stanislawski* (1986) 180 Cal.App.3d 748, 756 [225 Cal.Rptr. 770].) In *Cook* the court held overflights by planes flying at an altitude of approximately 1,000 feet violated one's right to privacy under the California Constitution. We question what is left of this case after *Ciraolo* and the passage of Proposition 8. We further question why we should apply the reasoning of that case over *Ciraolo* when we are to look to federal law for guidance, particularly when no state case is on point.

██ We therefore turn to the question of whether the helicopter violated defendant's privacy rights and thus whether a warrant should have been obtained prior to the overflight. First, there is no question defendant maintained a *subjective* expectation, as evidenced by the fencing and netting. Notably, however, the plants were visible from a neighbor's field. The real issue, as in *Ciraolo,* is whether this expectation was reasonable. In its decision the Supreme Court emphasized several factors in addressing this issue: (1) the sighting was made from a vantage point in the air in which the plane had a legal right to be; (2) it was done in a physically nonintrusive manner; and (3) the plants were observed with the naked eye. ██ In a recent decision the Fourth Circuit addressed the question of the reasonableness of helicopter overflights and found the following factors to be relevant: ". . . the total number of instances of surveillance, the frequency of surveillance, the length of each surveillance, the altitude of the aircraft, the number of aircraft, the degree of disruption of legitimate activities on the ground, and whether any flight regulations were violated by the surveillance." (*Giancola* v. *State of W. VA. Dept. of Public Safety* (4th Cir. 1987) 830 F.2d 547, 550-551.) ██ In our case the helicopter was flying at a lawful height—i.e., the record does not indicate it was endangering person or property. (14 C.F.R. § 91.79(d).) Also the plants were observed without any electronic aids. However, most importantly the flight was conducted in a "physically nonintrusive manner." The helicopter was flying at an altitude of 500 feet. It did not hover over defendant's backyard. Rather, after spotting the plants the officer had the pilot turn the helicopter around so he could take a picture and then flew off. No maneuvering was required of the aircraft because the plants were clearly visible. Under these facts we hold defendant's Fourth Amendment rights were not violated and no warrant was required to conduct the overflight.

This is not to say all helicopter overflights at 500 feet are legal. Nor is this the holding of *Ciraolo*. Helicopters and airplanes have different capabilities and the helicopter is particularly suited to conducting more intrusive-type flights. As was observed in *Sabo*, "We judicially notice the unique capabilities of the helicopter to gambol in the sky—turning, curtsying, tipping, hummingbird-like suspended in space, ascending, descending and otherwise confounding its fixed wing brethren doomed to fly straight, turn in caution and glidingly descend." (185 Cal.App.3d at p. 853.)

Thus we are not sanctioning "aerial acrobatics" such as "interminable hovering, a persistent overfly, a treetop observation, all accompanied by the thrashing of the rotor, the clouds of dust, and earsplitting din." (*People* v. *Sabo, supra,* 185 Cal.App.3d at pp. 853-854.) (See *Nat. Org. for Reform of Marijuana Laws* v. *Mullen* (C.D.Cal. 1985) 608 F.Supp. 945, 957, on remand 796 F.2d 276 (9th Cir. 1986) [injunctive relief granted from highly disruptive low level helicopter flights].)[3] Rather, we conclude that under the above facts the helicopter's conduct did not violate defendant's Fourth Amendment rights.

### B.   *Compliance With Knock-notice Requirements*

■   Defendant argues the officers did not comply with Penal Code section 1531 when they executed the warrant. This section provides, "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." Specifically defendant claims the officers should have waited until defendant's sister brought him out, or should have knocked and announced their purpose before entering. He alleges her statement that "she would get her brother" indicated they were to wait outside while she went and got him. Furthermore, even assuming defendant's sister consented to the entry, her consent was ineffectual because she was a minor (17 years old).

However, the officers substantially complied with section 1531 by announcing their identity and purpose to someone outside the house whom they believed had authority to consent to their entry. (*People* v. *Superior Court* (1973) 31 Cal.App.3d 788, 796-797 [107 Cal.Rptr. 756].) Defendant's sister said she lived there. Also the officer stated at the hearing that he did not know she was a minor. Thus the officer's entry was not in violation of

---

[3] In *Ciraolo* the Court also cautioned against certain intrusions: "The State acknowledges that '[a]erial observation of curtilage may become invasive, either due to physical intrusiveness or through modern technology which discloses to the senses those intimate associations, objects or activities otherwise imperceptible to police or fellow citizens.'" (*California* v. *Ciraolo, supra,* 476 U.S. at p. 216 [90 L.Ed.2d at p. 218, 106 S.Ct. at pp. 1813-1814, fn. 3].)

the knock-notice statute. (*People* v. *Bencomo* (1985) 171 Cal.App.3d 1005, 1018-1019 [217 Cal.Rptr. 826]; *People* v. *Murphy* (1974) 42 Cal.App.3d 81, 88 [116 Cal.Rptr. 889]; *People* v. *Lamb* (1972) 24 Cal.App.3d 378, 381 [101 Cal.Rptr. 25].)

Furthermore, stopping to knock and announce their purpose would not have furthered the purpose behind section 1531. ▇ As explained in *People* v. *Peterson* (1973) 9 Cal.3d 717 [108 Cal.Rptr. 835, 511 P.2d 1187], "[S]tatutes requiring announcement serve the following purposes and policies: '(1) the protection of the privacy of the individual in his home [citations]; (2) the protection of innocent persons who may also be present on the premises where an arrest is made [citation]; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations]; and (4) the protection of police who might be injured by a startled and fearful householder.' " (*Id.* at p. 723.) ▇ None of these purposes would have been served by requiring the officers to stop at the front door, knock, and again announce their purpose.

Lastly, although defendant's sister's words might have suggested the officers were to wait outside, the testimony indicates the officer was unclear as to what exactly she said. Furthermore, the circumstances surrounding their entry suggest the knock/notice requirement was inapplicable. The testimony showed the door was open and they all just turned and went inside, with the officers only a step or two behind. Also, they were not told they could not enter. The trial judge properly found compliance with the statute was unnecessary.[4]

The judgment is affirmed.

Anderson, P. J., concurred.

**POCHÉ, J.**—I concur in the result reached by the majority as to the constitutionality of the aerial surveillance of defendant's pot garden. This result is compelled by the decision of the United States Supreme Court in *California* v. *Ciraolo* (1986) 476 U.S. 207 [90 L.Ed.2d 210, 106 S.Ct. 1809]. Concluding that there is no reasonable expectation of privacy for views into

---

[4] At the hearing the judge stated, "I believe the purpose of section 1531 is to avoid sudden violent confrontations between officers stomping into a place with a search warrant and the occupants reacting before they realize it's police officers and someone getting hurt. [¶] In this case there was little, if any, danger of that happening because the officer went in right behind one of the occupants of the premises. [¶] Under the circumstances where the officer contacted an occupant on the front porch and announced his purpose, and then followed her inside, I find that there need not be compliance with section 1531, and therefore the motion to suppress is denied."

a back yard from navigable airspace *Ciraolo* holds that the Fourth Amendment is not transgressed by police observation of an open air marijuana plot from a fixed wing aircraft flying at 1,000 feet. (476 U.S. at pp. 213-214 [90 L.Ed.2d at p. 217].) *Ciraolo* draws an analogy between the public thoroughfares and the public airways and notes that "[a]ny member of the public flying in this airspace who glanced down could have seen everything that these officers observed." (*Ibid.*)

Navigable airspace is " 'airspace above the minimum safe altitudes of flight prescribed by the Civil Aeronautics Authority.' " (*United States* v. *Causby* (1946) 328 U.S. 256, 263 [90 L.Ed. 1206, 66 S.Ct. 1062]; 49 U.S.C. App. § 1304.) A minimum altitude of 500 feet is required for fixed wing craft over uncongested areas. (14 C.F.R. § 91.79(c).)

Here the flight over defendant's home was made by a helicopter which flew at "not less than five hundred feet (500') above ground level." Defendant's home is located near the periphery of town in an area where city lots are interspersed with large open tracts. Officer Torres testified that while flying over that open land it was possible to look down into defendant's yard with its open air marijuana patch. From these facts the trial court could have concluded that the helicopter overflight took place within navigable airspace and that the view of the marijuana was as available to the officers as it was to a traffic reporter or any other public passenger in an aircraft which happened to pass overhead.

Because I find *Ciraolo* to be controlling, I do not express any opinion as to the reasoning in *People* v. *Sabo* (1986) 185 Cal.App.3d 845 [230 Cal.Rptr. 170]. I emphasize, however, that unlike either *Sabo* or the pre-Proposition 8 case of *People* v. *Roberts* (1987) 195 Cal.App.3d 479 [240 Cal.Rptr. 658], the helicopter here did not fly at an altitude below 500 feet nor was the marijuana growing within a covered enclosure, requiring the craft to hover and maneuver to obtain a view of the plants.

For these reasons I concur that the overflight of defendant's yard does not offend the Fourth Amendment.

Appellants' petition for review by the Supreme Court was denied April 27, 1988.