Justice LaVECCHIA
and Judge CUFF (temporarily assigned), concurring and dissenting.
We concur in the judgment that affirms the trial court’s decision to quash the grand jury subpoena for telephone billing records. We respectfully dissent from the portion of the Court’s judgment that permits the State to apply for a court order to obtain those *156 records based on the new procedures outlined in the Court’s opinion.
This appeal is about where one puts one’s marker on privacy. For the telephone billing records in issue in this matter, we place our marker where this Court placed it over thirty years ago in State v. Hunt, 91 N.J. 338, 450 A.2d 952 (1982). Hunt established a warrant requirement for police access to telephone billing records. The line of eases that began with Hunt and continued with State v. Mollica, 114 N.J. 329, 554 A.2d 1315 (1989), and State v. Earls, 214 N.J. 564, 70 A.3d 630 (2013), should, in our view, include this appeal as part of that chain.
I.
In Hunt, supra, this Court rejected United States Supreme Court precedent, believing that “[i]t is unrealistic to say that the cloak of privacy has been shed” because telephone billing records were disclosed to the telephone company and its employees. 91 N.J. at 347, 450 A.2d 952. Because of the wealth of information that they reveal, the Court said that telephone billing records are “part of the privacy package.” Ibid. As such, law enforcement could not obtain those records “without any judicial sanction or proceeding.” Id. at 348, 450 A.2d 952.
For us there can be no sincere question whether Hunt imposed a warrant requirement for access to telephone billing records that include information about calls sent, received, and the length of time spent on each such call. The Court unmistakably understood its own precedent as requiring a warrant and not something less. See Chief Justice Robert Wilentz, The New Constitution, 49 Rutgers L.Rev. 887, 888 (1997) (stating, in speech delivered at Princeton University in 1985, “[W]e held that the state’s obtaining a defendant’s telephone bills without a warrant (order by a judge) simply by asking the telephone company to turn the bills over, or obtaining them in some other way without a warrant, constituted an unreasonable seizure under the New Jersey Constitution, ren *157 dering any evidence derived from those telephone bills inadmissible at trial”).
If it is arguable, at all, from the very language of Hunt itself, any doubt about the judicial process that the Hunt Court had in mind was cleared up by Mollica. That opinion began with this sentence: “In this case federal law-enforcement officers without a search warrant obtained hotel billing records relating to the use of an occupant’s room telephone.” Mollica, supra, 114 N.J. at 334, 554 A.2d 1315 (emphasis added). The Court asked whether Hunt’s protection reached “transient accommodations, such as hotel rooms, and ... hotel telephone toll records that are kept in the regular course of a hotel’s business to reflect for billing purposes the use of hotel-room telephones by guests.” Id. at 340-41, 554 A.2d 1315.
The Court said that it did, declining “to endorse ... a shallow constitutional distinction between a home on the one hand and motel rooms on the other.” Id. at 342, 554 A.2d 1315 (quoting People v. Oliver, 417 Mich. 366, 338 N.W.2d 167, 173 (1983)). That the hotel staff in addition to the telephone company “creat[ed] an extra circle of persons who have access to toll records for business purposes, [did] not alter this perception.” Id. at 343, 554 A.2d 1315. Accordingly, this Court declared that government seizure of those records “is subject to the requirements of antecedent probable cause and the issuance of a search warrant.” Id. at 345, 554 A.2d 1315 (emphasis added). In making that pronouncement, Mollica cited to Hunt’s language that telephone billing records were wrongfully obtained “without any judicial sanction or proceeding.” Ibid. That, in our view, nullifies any argument that “judicial sanction or proceeding” means anything other than a warrant supported by antecedent probable cause.
The State now argues that the warrant requirement should be tossed aside. According to the State, the warrant requirement is too burdensome. After all, a federal statute allows federal officers to obtain telephone billing records on the strength of a grand jury *158 subpoena, see 18 U.S.C.A. § 2703(c)(2), and so does a New Jersey-statute that was designed to mimic the federal standard, see N.J.S.A. 2A:156A-29(f). Because federal authorities can obtain telephone billing records early in joint federal-state conspiracy investigations, and because those records will not be admissible in state court, the State contends that the option to prosecute any part of the case in state court is foreclosed. Our warrant requirement, in the State’s view, serves as a roadblock to joint federal-state investigations.
The difficulty with the State’s position is that it has been advanced before, thoroughly considered, and rejected. The warrant requirement was not some ill-considered aside by this Court. Writing for the Court in Mollica, Justice Handler was expressly aware of the practical implications that follow from imposing a warrant requirement under Article I, Paragraph 7 when none is required under the Fourth Amendment. Ironically for the State, Mollica is “the seminal case” on the issue. Wayne A. Logan, Dirty Silver Platters: The Enduring Challenge of Intergovernmental Investigative Illegality, 99 Iowa L.Rev. 293, 311 (2013).
When states, like New Jersey, began to impose more protective procedures under their state constitutions, it constituted a twist on the old “silver platter” doctrine. Before the Fourth Amendment applied to the states, evidence would pass from state officers— unburdened by the Fourth Amendment — to federal authorities on a silver platter. Mollica, supra, 114 N.J. at 346-47, 554 A.2d 1315. But as judicial federalism gained a foothold, “evidence [could] now flow to state officers from federal officers governed by more lenient standards.” Id. at 351, 554 A.2d 1315. The Mollica Court detailed the jurisdictional limits of a state constitution, which “ordinarily governs only the conduct of the state’s own agents or others acting under color of state law.” Id. at 345, 554 A.2d 1315. Just as a state constitution does not constrain officers of other states, “state constitutions do not control federal action.” Id. at 352, 554 A.2d 1315. Thus, it does not offend the New Jersey Constitution when an officer of another jurisdiction trans *159 fers criminal evidence to New Jersey law enforcement, so long as that out-of-state officer obtained the evidence lawfully and independent of New Jersey authorities. Id. at 358, 554 A.2d 1315.
Applying those principles to the ease at hand, the Mollica Court explained that the telephone billing records “were obtained by federal agents exercising federal authority in a manner that was in conformity with federal standards and consistent with federal procedures.” Id. at 354, 554 A.2d 1315. Once legally seized, nothing prevented the federal agents from turning over the telephone record evidence to state authorities, even if its seizure violated state constitutional standards. Id. at 355, 554 A.2d 1315. But that turnover was subject to a “vital” limitation: “When such evidence is sought to be used in the state, it is essential that the federal action deemed lawful under federal standards not be alloyed by any state action or responsibility.” Ibid.
Mollica’s holding and analysis remained tethered to Hunt’s warrant requirement, mindful of the burdens that the warrant requirement would impose on joint federal-state investigations. See id. at 356, 554 A.2d 1315 (recognizing that “antecedent mutual planning, joint operations, cooperative investigations, or mutual assistance between federal and state officers may sufficiently establish agency and serve to bring the conduct of the federal agents under the color of state law”). Thus, when it comes to telephone billing records, our Court in Hunt and Mollica could not have been clearer: A warrant supported by probable cause is required. And, equally clear is this: The Court knew precisely the burdens that a warrant requirement for telephone billing records would impose on joint federal-state investigations.
Mollica addressed the prime concern that, the State now asserts, renders the warrant requirement unworkable, namely that federal officers can obtain telephone billing records before their state counterparts. To us, Hunt resolved the issue. And Mollica reaffirmed it. Both treated the privacy interest in telephone billing information equally, and the privacy interests were not place-based. In each, the Court demanded a probable cause *160 showing and review by a judicial officer before the State could trench on the private matters disclosed through the telephone billing records. Certainly, the warrant requirement and its probable cause standard might impede joint federal-state operations, but the privacy interest was great enough, in our Court’s view, to justify that impediment.
That was our law, our proud law. The State’s argument does not justify tossing aside the standard that has governed in this State for more than thirty years. In any case where this Court imposes a warrant requirement under Article I, Paragraph 7, and that requirement is lacking under federal law, federal law enforcement officers will be able to proceed more quickly than their New Jersey counterparts. Federal officers may choose not to wait for a warrant, and that will mean that, in cooperative investigations, the seized evidence will be inadmissible in a New Jersey prosecution. That is a necessary and established consequence of doing business under a privacy-protective state constitution. The State’s recycling of the same complaints about that consequence does little to advance its argument that Hunt is “unworkable in practice.”
II.
The State also asserts that New Jersey is an outlier, a fringe jurisdiction. It argues that law enforcement can obtain telephone billing records almost everywhere else on the authority of a grand jury subpoena grounded in a relevancy finding, but we require a warrant.
In our view, that argument sets a false equivalency. The starting point for any nationwide comparison is not all fifty states but those states that have departed — like we have — from Fourth Amendment law that holds that “a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.” Smith v. Maryland, 442 U.S. 735, 743-44, 99 S.Ct. 2577, 2582, 61 L.Ed.2d 220, 229 (1979); see also United States v. Miller, 425 U.S. 435, 443, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71, 79 *161 (1976). Only about eleven states have done so. See Stephen E. Henderson, Learning from All Fifty States: How to Apply the Fourth Amendment and Its State Analogs to Protect Third Party Information from Unreasonable Search, 55 Cath. U.L.Rev. 373, 376 (2006). It is thus entirely unsurprising that most states require only a grand jury subpoena. That simply mirrors the federal standard. In those states, there is no protectable privacy interest in telephone billing records under either the Fourth Amendment or the state constitution’s search-and-seizure provision; accordingly, it should be easier for law enforcement to obtain those records.
Once the comparison point is properly cut down, the analysis is more balanced. In some states, like ours, that have rejected the third-party doctrine, and have in turn found a protectable privacy interest in certain telephone records, a warrant supported by probable cause is required before the government can access such information. See, e.g., State v. Rothman, 70 Haw. 546, 779 P.2d 1, 7 (1989) (recognizing expectation of privacy in “telephone numbers [persons] call on their private lines” and requiring government to obtain warrant before “tap[ping] ... private telephones to obtain such information, or requir[ing] the telephone company to supply such information”); State v. Thompson, 114 Idaho 746, 760 P.2d 1162, 1167 (1988) (“Since there was no warrant based on probable cause for the installation and use of the pen register in this case, the information obtained by its use should have been excluded from the determination of probable cause for the issuance of the wiretap orders.”); State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 813 (1986) (holding that Washington Constitution “prevent[s] the defendant’s long distance home telephone records from being obtained from the phone company, or a pen register from being installed on her telephone connections, without a search warrant or other appropriate legal process first being obtained”). In others, however, a subpoena bounded by a relevancy standard may do the job, at least in the grand jury context. See People v. Mason, 989 P.2d 757, 761-62 (Colo.1999).
*162 In its rush to resolve what it views as a tension in our ease law, the majority creates another one. Presumably after this appeal, the State will still use a communications data warrant to install a pen register or a trap-and-traee device so that it can track, in real time, calls made and received. Although some courts have recognized a distinction between real-time and historical data, we have not. See Hunt, supra, 91 N.J. at 344, 450 A.2d 952 (“The expectation of privacy in a pen register, both subjectively and objectively, is substantially similar to that in toll billing records.”); see also People v. Larkin, 194 Cal.App.3d 650, 239 Cal.Rptr. 760, 762 (1987) (“A pen register, providing information about outgoing and incoming calls, involves the same privacy rights as toll information in phone company records.”); Stephen E. Henderson, Beyond the (Current) Fourth Amendment: Protecting Third-Party Information, Third Parties, and the Rest of Us Too, 34 Pepp. L.Rev. 975, 1016 (2007) (“[T]he acquisition of telephone numbers dialed in real time via a pen register is equivalent to the acquisition of those numbers from a telephone company record. Therefore, the constitutional restraint on government access should be identical. Both processes acquire the same information, and it is no more invasive to have information captured in real time.”).
Notably, this Court’s decision in Earls, supra, did not draw a distinction between a real-time request for cell-site information and historical data. 214 N.J. at 588, 70 A.3d 630. And such a distinction can prove highly superficial. For data to be historical, it need not be far removed in time. When a law enforcement officer requests a cellular provider to relay a target’s telephone records in hour-by-hour intervals, it is technically a request for historical records. Any delay — no matter how short — can turn data into historical data. See State v. Perry, — N.C.App. -, 776 S.E.2d 528, 535 (2015) (calling location information “historical” when “evidence show[ed] AT & T emailed the delayed recorded information to [law enforcement] every fifteen minutes”).
*163 The incongruity we see in the outcome reached by the majority, at the State’s urging, is that, under the majority’s new holding, to follow a suspect’s telephone activity as it happens requires a judicial warrant based on probable cause. But if the police want the suspect’s telephone records two or three minutes after the call is completed, a warrant based on probable cause is not necessary. It is not the move from a warrant to a judicially reviewed subpoena that is the most troubling. After all, a subpoena is a commonly used device to request documents. It is the lessening of the standard from probable cause to relevancy. Now a watered-down grand jury subpoena will suffice for telephone billing records, so long as there is judicial oversight to ensure that a relevancy standard is met, somehow, for the particular investigation. Because relevancy sweeps broadly, particularly at the beginning stages of a criminal investigation, one must ask what exactly is the point then of an Article I, Paragraph 7 privacy interest. Relevance governs the breadth of a grand jury’s subpoena power anyway. Pressler & Verniero, Current N.J. Court Rules, comment 2 on R. 1:9-2 (2015) (“With respect to grand jury investigations, relevance continues to constitute the standard for appropriate issuance of a subpoena duces tecum....”).
In reaching its conclusion, the majority places a good deal of weight on this Court’s decision in State v. McAllister, 184 N.J. 17, 32-33, 875 A.2d 866 (2005), in which the Court recognized an Article I, Paragraph 7 privacy interest in bank records. That interest was protected by only a grand jury subpoena based on a relevancy standard. Id. at 36, 875 A.2d 866. Next in line was State v. Reid, 194 N.J. 386, 945 A.2d 26 (2008). There, the Court determined that subscriber information held by an Internet Service Provider was also protected by the New Jersey Constitution. Id. at 399, 945 A.2d 26. Pointing to McAllister, the Court said a grand jury subpoena was sufficient to protect that interest. Id. at 403-04, 945 A.2d 26.
From those cases, the majority sees a need to make our privacy law jurisprudentially consistent. Hunt, it says, is out of tune with *164 the rest of our law. To accomplish that, the majority drops the level of protection for telephone records and says that for those records a relevancy standard is more than enough. Because McAllister and Reid held a grand jury subpoena sufficient, we should do the same here. We disagree.
In our view, the State benefited in McAllister from the reality of a reduced expectation of privacy that bank records have due to the well-known regulatory review and reporting requirements on transactional behavior. 31 U.S.C.A. § 5313(a) grants the Secretary of the Treasury broad authority to prescribe when domestic financial institutions involved in monetary transactions must “file a report on the transaction.” See also 31 C.F.R. § 1010.311 (“Each financial institution other than a casino shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $ 10,000, except as otherwise provided[.]”). The Treasury Secretary may, moreover, “require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation.” 31 U.S.C.A. § 5318(g)(1); see also 31 C.F.R. § 1020.320(a)(1) (enforcing that requirement). The Court’s lesser concern with bank customer privacy expectations and rights was registered by its willingness to allow subpoenas without prior notice to the target. McAllister, supra, 184 N.J. at 42, 875 A.2d 866.
That lesser concern with privacy rights is a far cry from the traditional respect shown to telephone records and suggests that bank records should be regarded as the outlier case, not Hunt or Mollica. Reid relied on McAllister in the new world of internet subscriber information. Given its limited scope — the State concedes that a search warrant is required to gain access to a full internet search history — Reid should hardly be regarded as the “new” assessment of privacy rights historically respected in this *165 State. Nothing in either McAllister or Reid suggests that we intended to turn the entirety of our privacy law on its head.
It is particularly perplexing that the Court holds as it does now, at a time when we are more dependent on our telephones than ever before. We are in contact all the time through cell phones. And the associational concerns that drove Hunt, and were present in Earls too, are no less weighty today. See Hunt, supra, 91 N.J. at 351-52, 450 A.2d 952 (Pashman, J., concurring); Earls, supra, 214 N.J. at 586, 70 A.3d 630. Our jurisprudence now protects, through a warrant requirement, the location of those phones but not who we are calling or who is calling us. The majority asserts that it is striving for consistency in our jurisprudence as justification for tossing aside Hunt and Mollica. To us, consistency is to be found in answering the question here in the same way we have dealt with the protection of privacy interests in telephone information in Hunt, Mollica, and Earls. A warrant issued on the basis of probable cause should remain the prerequisite to access telephone billing records. This case should have been an unremarkable application of a consistent line of cases addressing law enforcement access to private telephone records.
III.
In sum, even if we are an outlier compared to those jurisdictions that allow law enforcement access to telephone billing records through means short of a warrant issued on probable cause, that alone is not a reason to change our law. This Court has been a leader in privacy rights, proudly proclaiming that Article I, Paragraph 7 is not simply “a procedural matter” but “a reaffirmation of the privacy rights guaranteed to our citizens and of our duty as judges to secure them.” State v. Eckel, 185 N.J. 523, 540, 888 A.2d 1266 (2006). It did not bother us that we were an outlier in Hunt. And it did not bother us that we were an outlier in Mollica. Why then should it bother us now? So fixated on aligning our state jurisprudence with the federal standard, we fear the State, and now the majority, has sacrificed our law for the sake of that *166 uniformity. We are unpersuaded that any legitimate basis for overturning our precedent — -for that is what is happening here no matter how the analysis is dressed up — is present here.
Accordingly, we respectfully dissent.